Hayslip *v.* Bondurant *et al.*

(*Nashville*, December Term, 1951.)

Opinion filed June 7, 1952.

Sam F. Cole and J. E. Madden, both of Memphis, for appellant.

Marion G. Evans, Jack Petree and Evans, Exby, Moriarty & Petree, all of Memphis, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Mrs. Hayslip filed in the Chancery Court at Memphis a petition for writ of certiorari seeking a review under Code Sections 9008 et seq. of the order or the Board of Education of Memphis Public Schools rescinding her contract to teach in one of its schools for the year commencing July 1, 1951 and dismissing her on September 14 after a hearing on that day had pursuant to written notice received by her on September 7, 1951.

On motion of defendants, the Chancellor declined to issue the writ and dismissed the petition on the ground that the action taken by the Board, as that action is stated in the petition, was not subject to review by the Court. It is from that decree that Mrs. Hayslip has appealed. In as much as the petition was dismissed on motion, consideration of the case must proceed on the assumption that the fact allegations of the petition are true.

The Memphis Board of Education and the authority which it has with reference to the City Schools is by special act of the General Assembly, Chapter 30 of the Acts of 1869, as amended by Chapter 17 of the Acts of 1883. Section 1 of that statute places the Memphis City Schools "under the *exclusive* management and control of" the Memphis Board of Education. By Section 7 of the Act this Board is given the "power to employ and *dismiss* teachers". (Emphasis supplied.)

There is nothing to indicate that the Legislature intended that the expression "exclusive management and control" of the schools, as used in Section 1 of the Act, be given any meaning other than that usually attributed to such language. That being true, it must be concluded

that the Legislature intended for the findings and actions of the Memphis City Board of Education to be final, and not subject to review by the Courts under writ of certiorari, so long as that Board acts within its jurisdiction, without fraud, and observes statutory requirements. *W. J. Savage Co.* v. *Knoxville,* 167 Tenn. 642, 644, 72 S. W. (2d) 1057. Therefore, the question here is reduced to the proposition of whether Mrs. Hayslip's petition contains allegations which, if true, disclose that the Board exceeded its jurisdiction, acted fraudulently, or failed to observe statutory requirements.

It is said at the conclusion of the petition that there was no evidence to support the findings and conclusions of the Board. This statement must, however, be disregarded because the petition shows on its face that the Board did hear evidence at the hearing before reaching its conclusion that the charge made against Mrs. Hayslip, and hereafter detailed, is true.

There must likewise be disregarded the allegation of the petition that the Board "predicated its findings and conclusions upon incompetent, immaterial, and irrelevant testimony." The question of whether the testimony heard by the Board was incompetent, immaterial and irrelevant was a question of law. In order that the Chancellor might determine whether that allegation is true, as a matter of law, it was necessary that the petition state at least the substance of the testimony which the pleader regarded as incompetent, immaterial and irrelevant. It should be said that the same test would apply to the allegation that there was no evidence to support the verdict, since the petition shows that evidence was submitted.

In the two respects mentioned immediately above the situation about parallels the petition under consideration

in *W. J. Savage Co.* v. *Knoxville,* supra. There the Court observed that ''the petition charges that the board of equalization acted illegally, beyond its jurisdiction, arbitrarily, and discriminatorily, *but the only specification is * * *''* etc. (Emphasis supplied.)

After alleging that Mrs. Hayslip had a contract with the Board to teach for the year commencing July 1, 1951, the first specification in her petition is that she received on September 7, 1951 a notice that the superintendent of City Schools had recommended to the Board that she be dismissed because she had circulated rumors in the public press and otherwise in the community to the effect that the students of one of the public schools of Memphis were indulging in ''organized sex immorality''; and that an investigation of these rumors developed the fact that they were false, and were not supported by one scintilla of evidence; that these charges had cast a very harmful and unfavorable reflection and injury upon the students, their parents, the school faculty, and the Memphis School System.

The law under which the Memphis Board of Education functions empowers that Board to dismiss teachers. That law does not enumerate the causes for which it may dismiss a teacher with whom it has entered into a contract. While we by no means propose to say that the Memphis Board of Education may dismiss a teacher without cause, notwithstanding its contract with such teacher, it does logically follow from the language of the statute and lack of enumeration that the general power of the Board to dismiss teachers with whom it has a contract means that it may dismiss such teacher for any cause that may be regarded as reasonably justifying such action. Since the petition does not recite what the evi-

dence before the Board was, it must be assumed, in considering the merits of the petition, that the Board did have evidence which justified it in concluding that Mrs. Hayslip was guilty of the aforementioned act charged. Now, therefore, the question is whether such conduct upon the part of Mrs. Hayslip may reasonably be regarded as a cause for dismissal.

In the Indiana case of *Stiver* v. *State,* 211 Ind. 370, 1 N. E. (2d) 1006, 1008, 7 N. E. (2d) 183, annotated in 110 A. L. R. 805, the Board of Education was authorized by law to cancel a teacher's contract for specified reasons and " 'other good and just cause.' " The teacher involved was discharged for "lack of co-operation". It was held that " 'other good and just cause' would include any cause which bears a reasonable relation to the teacher's fitness or capacity to discharge the duties of his position,' " and that "lack of co-operation" is reasonably related to the fitness or capacity of the teacher for the performance of his duties.

In the Indiana case of *School City of East Chicago* v. *Sigler,* 219 Ind. 9, 36 N. E. (2d) 760, 762, 136 A. L. R. 1149, the Board, pursuant to its authority to make reasonable rules and regulations, resolved that any school employee who becomes a candidate for a political office must take a leave of absence without pay. The question was whether this was a reasonable regulation. It was held that "activities of the teacher which have a reasonable bearing on his ability, efficiency and influence in the class room" are within the bounds of reasonable regulation by the School Board. By analogy the same test would reasonably apply in determining whether given conduct can be said to be a reasonable cause for dismissal of a teacher with whom the Board has a contract of employment.

The tests declared by the Indiana cases, supra, for determining whether given conduct may reasonably be regarded as a proper cause for the dismissal of a teacher with whom a Board of Education has a teaching contract is logical and convincing. It is one which may safely be followed when the authority of the Board is to dismiss for any cause that is reasonable, as in the case at bar.

A charge that boys and girls attending a certain public school are organized into a club for the purpose of engaging in sex immorality is a charge that reflects seriously, and may be in a very permanently harmful manner, upon the boys and girls in that school, as well as being a serious reflection upon the entire management of that school from the top level on down. It is a charge which well may be calculated to bring management, teachers, and pupils into such public disrepute as to seriously damage the efficiency of that school and of the entire school system of which that school is a part.

The charge becomes all the more detrimental and serious when made by a teacher in that system, in that it might well and generally be regarded as coming from a person who is in a position both to know and to be very careful about circulating the charge.

It is, of course, a fact that a teacher in that school system who falsely, publicly, and with no evidence to support, makes and circulates such a charge will thereby bring down upon herself the dislike, disrespect and contempt of the pupils, the parents and the public. Such conduct upon the part of such teacher can, therefore, reasonably be said to have a very material and quite detrimental bearing on her fitness, efficiency and influence in the school or school room as a teacher. Perhaps it is not inaccurate to say that such conduct might

well nigh destroy her usefulness as a teacher in that system.

As heretofore stated, in testing the sufficiency of this petition it must be assumed that material evidence submitted to the Board substantiated its finding that Mrs. Hayslip was guilty of the charge made. She offered no evidence to the contrary. Since, for the reasons stated, such misconduct had a reasonable and very detrimental bearing upon her efficiency and influence in the class-room and in the school, the Chancellor could not determine from the face of the petition that the Board had dismissed her without reasonable cause.

So it is that Mrs. Hayslip's petition does not disclose that the Board exceeded its authority or abused its discretion in dismissing her, unless it is revealed by the petition that the procedure followed by the Board in conducting the hearing was illegal or inherently unfair.

According to the petition, Mrs. Hayslip received a written communication from the Board on September 12 that the nature of the charges were such that the best interest of students and parents necessitated a restriction of attendance at the hearing to members of the Board and to Mrs. Hayslip and her attorneys "and accredited members of the press". Mrs. Hayslip alleges that she construed this letter to mean that she would not be allowed to present witnesses at the hearing. She insists that this fact made it incumbent upon the Chancellor to grant the writ.

The petition states that the letter she received on September 7 advising her of the charges against her gave her notice "that she might be heard" at the hear-

ing concerning those charges. The only reasonable meaning to be attributed to such notice is that she might present such witnesses as she saw fit. There is nothing in the subsequent letter of September 12 to at all justify the conclusion that she would be deprived of this privilege. The only reasonable construction to be placed upon that letter is that the nature of the matter to be heard was such that the general public would be excluded. It cannot be logically said that the Chancellor should have granted the writ because of her conclusion, not at all justified, as to the meaning of the letter of September 12.

The remaining specifications of alleged illegal conduct upon the part of the Board are that (1) petitioner was given only a week to prepare her defense against the charges made, and (2) the copy of the charges accompanying the notice of the hearing was an unsworn copy, and (3) the witnesses who testified at the hearing were not sworn.

The Chancellor could not say, either as a matter of law or fact, that the Board abused its discretion in not giving her more than a week to prepare her defense. Her petition shows that the witnesses which she wanted to interview were those who had testified before the Shelby County Grand Jury about this affair. As a practical matter, we know that a very large number of witnesses may be interviewed within a week by one who reasonably endeavors to do so.

There is nothing in the law governing the procedure of this Board which requires that the copy of the charges furnished to the teachers shall be a sworn copy. Nor does this statute require that the witnesses who testified before the Board with reference to the charges

be sworn. This insistence was made in a somewhat similar proceedings in *State ex rel. Sherman* v. *Hyman*, 180 Tenn. 99, 113, 171 S. W. (2d) 822, 827, wherein the Court, in rejecting that insistence, said this:

"We find no fault with the contention of relators that in all proceedings in courts of law witnesses must be sworn. But this is not a proceeding in a court of law, and furthermore would not be reversible error if it does not affirmatively appear to have influenced the decision."

The hereinabove analysis of the allegations of Mrs. Hayslip's petition for certiorari makes it necessary to conclude that this petition on its face does not disclose that the Memphis Board of Education exceeded its jurisdiction, acted fraudulently, or failed to observe statutory requirements, in the hearing of the charges made against Mrs. Hayslip or in rescinding her contract and dismissing her as a teacher. Hence, the Chancellor did not err in denying the writ and dismissing the petition.

Let the decree be affirmed with costs adjudged against Mrs. Hayslip.