Jack **MORRISON**, Appellant,

v.

**HAMILTON COUNTY BOARD OF EDUCATION, Appellee.**

Supreme Court of Tennessee.

May 7, 1973.

Bean, Phillips & Bean, Chattanooga, for appellant.

Samuel H. Payne, Asst. County Atty., Chattanooga, for appellee.

## OPINION

DYER, Chief Justice.

■■■ This case presents the issue of whether a teacher in the public schools of this state can wear a full beard even though such be in violation of rules promulgated by a County Board of Education, pursuant to T.C.A. § 49–214, which statute authorizes a county board of education to "manage and control all county public schools established or that may be established."

On September 10, 1970, the Hamilton County Board of Education adopted the following rule applicable to students and teachers:

> Students and teachers should use such taste in the selection and the wearing of their clothes, make up, and hair styles and maintain such neatness, cleanliness, and self-respect so that the school is a desirable place in which to promote learning and character development. No apparel, dress, or grooming that is or may become potentially disruptive of the classroom atmosphere or educational process will be permitted.

On September 16, 1970, the Board of Education, by majority vote, decided to discharge Jack Morrison, a teacher having tenure in the system for alleged insubordination. This decision was based upon the fact Jack Morrison, while teaching in the schools was wearing a full beard which the Board felt was disruptive or potentially disruptive of the educational process and in violation of the rules, which rules under T.C.A. § 49–1307(12), a teacher is required to obey.

The Board of Education did not immediately implement its decision of September 16, 1970, but by letter dated September 17, 1970, informed Jack Morrison of its decision and stated he would not be discharged if he shaved his beard and promised to keep it shaved in the future. In response to this letter Jack Morrison requested a formal hearing before the Board, which hearing was held on October 20, 1970.

Upon the formal hearing Jack Morrison refused to comply with the demands of the Board that he shave his beard and the Board being of the opinion his beard was disruptive or potentially disruptive of the educational process and in violation of its rules, discharged him for insubordination.

Jack Morrison, pursuant to T.C.A. § 49–1417, filed a timely appeal to the Chancery Court. The chancellor, after a de novo hearing, affirmed the action of the Board of Education. Pursuant to the same statute, Jack Morrison has filed a timely appeal to this Court.

The chancellor, in his memorandum, found as follows:

The plaintiff contends that the Board, in discharging him because of his wearing a beard, has (1) deprived him of the right to teach as guaranteed by the teacher tenure act, (2) has deprived him of liberty or property without due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States in that depriving him of the opportunity to earn a livelihood by practicing his profession in the schools of Hamilton County solely because he wears a beard is arbitrary and unreasonable because without any direct and substantial relationship to the conduct of a proper and efficient school system, (3) that the above quoted regulation upon which the charge of insubordination is based is so vague and uncertain that to permit it to be used as the basis for the charge of insubordination amounts to a denial of due process of law under the Fourteenth Amendment, and (4) finally, the plaintiff charges that the Fourteenth Amendment of the United States Constitution guarantees to him a "right of privacy" which he alleges has been violated by the action of the Board in discharging him from his teaching position because of his wearing a beard.

The position of the Board is that its regulation of 1965 prohibiting the wearing of beards by teachers and students and the regulation of 1970 adopted to replace the 1965 regulation and which has been hereinabove quoted is a reasonable and proper regulation to maintain proper discipline and promote efficiency in the public schools of Hamilton County and that the plaintiff has willfully violated and continues to violate said regulation and, therefore, is guilty of insubordination justifying his discharge.

\* \* \* \* \* \*

First, the Court holds that the regulation in question is not so vague and indefinite as to leave its interpretation to the whim of the Board and thereby amount to a denial of due process of law. "Disrupt," according to Webster's New World Dictionary, means "to break apart; split up, rend assunder." Thus, the language employed in the regulation has a definite, well-understood meaning which is capable of objective application.

Next, the Court concludes that the plaintiff's claim that he has a constitutional right to wear a beard in the classroom as an aspect of an alleged "right of privacy" guaranteed by the Fourteenth Amendment is without merit. Jackson vs. Dorrier, 424 F.2d 213 (5th Cir.–Tenn.) To assert that he has a constitutional right to wear a beard under any and all circumstances is to beg the very question here in dispute. It is his right to teach while bearded that is here involved; not his right to wear a beard generally.

This leaves the remaining questions whether or not the regulation of the Board as applied to the plaintiff, violates his rights under the Tenure Act, or is so arbitrary and unreasonable as to amount to a denial of substantive due process of law under the Fourteenth Amendment.

The Legislature, feeling that it could not foresee all the numerous and perplexing problems that were to arise in the operation of the public schools, granted broad discretionary powers to the county Board of Education to make such rules and regulations for governing the public schools as the Board deems advisable, subject, only, to the requirement that they be "reasonable" and not discriminatory. This grant of power has been broadly construed by the Supreme Court of Tennessee. State vs. Marion County Board of Education, 202 Tenn. 29, 302 S.W.2d 57; Hayslip v. Bondurant, 194 Tenn. 175, 250 S.W.2d 63.

In the *Marion County* case the Court cited *Hayslip* case with approval and said:

". . . any activity of a teacher which has a reasonable bearing on his influence in the class room is within the bounds of reasonable regulation by the Board. Likewise, any activity of students which can be said to have a reasonable bearing on his or her influence upon the students or school is within the bounds of reasonable regulation by the Board in the exercise of the statutory duty vested in it to suspend pupils 'when the progress or efficiency of the school makes it necessary . . .'

Boards of Education, rather than Courts are charged with the important and difficult duty of operating the public schools. So, it is not a question of whether this or that individual judge or court considers a given regulation adopted by the Board as expedient. The Court's duty, regardless of its personal views, is to uphold the Board's regulation unless it is generally viewed as being arbitrary and unreasonable. Any other policy would result in confusion detrimental to the progress and efficiency of our public school system."

The Court upheld the action of the Marion County Board of Education in expelling a girl from her senior class in high school because she became married during the school term in violation of a rule of the Board forbidding attendance of students who married during the school term.

The Court turns now to an examination of the evidence in the case at bar. There

is no evidence that an actual disruption resulted from the plaintiff's wearing his beard on the first day of the 1970–71 school term, which is the only time he appeared in school with the beard, he being thereafter suspended from duty. Neither is there any evidence in the record that an actual disruption has resulted anywhere else in the Hamilton County school system by reason of any teacher wearing a beard. There is some opinion evidence on the part of the Superintendent and 16 principals in the county school system that the wearing of a beard by a teacher would cause a "problem." It appears that the chief fear of these school administrators is that if teachers were permitted to wear beards it would undermine their authority in efforts to enforce the grooming regulations of students. The Superintendent fears that the parents of students of the school in question would strongly disapprove of teachers wearing beards and as a result would undermine the confidence of their children who were students in the school. He fears that such parents might very well make a community issue of the teacher's beard and petition the Board to remove the teacher. He questioned whether in these circumstances the teacher could maintain sufficient respect to be effective as a teacher. He states that he has had some anonymous letters and telephone calls from persons purporting to be parents of students in the school in question who expressed opposition to the plaintiff being permitted to wear a beard.

The policy forbidding beards grew out of the Chattanooga Sesqui-centennial in 1965 at which time many young adults and older citizens grew beards as a part of those festivities. At the beginning of the school term in 1965, the Superintendent recommended that beards be forbidden, but the evidence fails to show the reason for the Superintendent's recommendation in this regard.

At the trial the plaintiff's beard was full, covered his face and chin and was approximately two inches in all over length. His hair was not of abnormal length. Thus groomed, he presented a striking appearance.

Of course, personal grooming is largely a matter of choice for each individual. But the grooming of one person is of concern not only to him but to all others with whom he comes into contact; we have to look at each other, whether we like it or not. It is for this reason that society sets certain limits upon the freedom of the individual to choose his own grooming.

Like other rules of conduct, these limits represent the consensus of opinion or sensibilities of the majority of any given time, and, they vary from one society to another and from one period of time to another. Thus, acceptable dress or grooming in Bali or Borneo may be strictly taboo in India or the United States; or, dress during colonial times may appear to be ridiculous if used in the twentieth century.

Some of these limits are enforced by society without resort to the law and its penalties, while others, such as the disapproval of public nudity, do call for legal sanctions.

Next the Court is of the opinion that the special nature of a public school should be considered. All children, regardless of race, creed, culture, heritage, or "life style" are compelled by law to attend. The grooming choice of one may be offensive to another. While some are intent upon learning and studying, others are intent upon distracting the former. Some are well disciplined while others are undisciplined "problems." Some are brilliant and some are dense. All are immature, more or less, and, finally, some are more interested in their personal appearance than anything else; the exhibitionists. These factors convince the Court that grooming and dress in the public schools may well be considered to call for special regulations that would not be necessary elsewhere.

It must be kept in mind that the objective, the reason for the school's existence is to *educate* the students. The school au-

thorities may adopt and enforce such rules for dress and grooming of students and teachers as are necessary or proper to remove extraneous influences from the classroom and thus bring about a focus upon the lessons at hand. The attempt may be made to divert attention from the hemline to the blackboard, or, from beards to books. Waugh v. Mississippi University [237 U.S. 589,] 35 S.Ct. 720 [59 L.Ed. 1131;], Ferrell v. Dallas Ind. School Dist. [5 Cir.,] 392 F.2d 697.

Obviously, the determination of desirable regulations in this regard should be the function of school experts rather than the Courts. As Mr. Justice Black of the United States Supreme Court has said, the day to day operation of the public schools should be left up to the "school masters." Tinker v. Des Moines Ind. Community School Dist., [393 U.S. 503,] 89 S.Ct.Repr. 733 [21 L.Ed.2d 731] (dissenting opinion). Our Tennessee Supreme Court agrees. State v. Marion County Board of Education, *supra*.

"We are accustomed to accept the testimony of experts in the various fields of human activity as to what is reasonably necessary for the welfare of the particular activity as to which this expert therein is testifying. No reason is suggested as to why this practice should not be followed when the witness is an expert in the field of operating public high schools. Certainly the principals of the high schools in question should be regarded by reason of training, experience and observation as possessing particular knowledge as to the problem which they said is made by the marriage and uninterrupted attendance of students in their respective schools." State v. Marion County Board of Education, *supra*.

Applying this rule to the evidence already discussed, the court concludes that the Board's regulation forbidding teachers and students to wear beards is within the bounds of reason and, therefore, does not deny the plaintiff any right under the Teacher Tenure Act. The rule being "rea-sonable and not discriminatory," and "continued failure to obey" it by the plaintiff amounts to "insubordination."

The Court does *not* hold that the rule hereby held to be within the bounds of reason is the *only* reasonable rule that the Board could have chosen; had it chosen to permit beards, that, too, would be within the bounds of reason, in the opinion of this Court. But, the choice is properly that of the Board. The Court approves the following statement from the opinion of the Massachusetts Supreme Judicial Court in Leonard v. School Committee [349 Mass. 704,] 212 N.E.2d 468, 14 A.L.R.3d 1192, to-wit:

"Here, accordingly, we need only perceive some rational basis for the rule requiring acceptable haircuts in order to sustain its validity. Conversely, only if convinced that the regulation of pupils' hair styles and lengths could have no reasonable connection with the successful operation of a public school could we hold otherwise.

. . .

We are of opinion that the unusual hair style of the plaintiff could disrupt and impede the maintenance of a proper classroom atmosphere or decorum. This is an aspect of personal appearance and hence akin to matters of dress. Thus as with any unusual, immodest or exaggerated mode of dress, conspicuous departures from accepted customs in the matter of haircuts could result in the distraction of other pupils."

The foregoing reasoning applies also to the Constitutional question raised by the plaintiff and the Court, therefore, concludes that the regulation in question bears a reasonable relation to the proper management of the public schools and thus does not deny to the plaintiff "due process of law," or "the equal protection of the laws." Accord: Jackson v. Dorrier, *supra*; Ferrell v. Dallas Ind. School Dist., *supra*; Leonard v. School Committee, *supra*; Brownlee v. Bradley County Tennessee Board of Education, 311 Fed.Supp.

1360 (Wilson, Dist. Judge—1970). The great majority of courts considering this issue are in agreement. But, there are a few cases to the contrary.

The chancellor is affirmed.

CHATTIN, HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.

HUMPHREYS, Justice (concurring).

I concur in this case with reluctance. My concurrence is occasioned by the fact that courts ought not be used to fashion hair and beard styles acceptable to school administrators. My reluctance is due to my conviction that there is nothing inherently harmful in a beard such as would justify the action taken.

While Jack Morrison's beard may, as suggested, provide an unjustified diversion to the class, it could well be that without his beard he would furnish an even more detrimental diversion of attention. Who knows?