ALICE M. BATCHELDER, Chief Judge,
concurring in part and dissenting in part.
While I join Part II.C (procedural due process) and Part II.D (substantive due process) of the majority opinion, I cannot agree with the majority’s conclusion that Plaintiffs have municipal taxpayer standing. I therefore join Judge Rogers’ dissent with respect to that issue. Because I do not believe that Plaintiffs have standing to bring their Establishment Clause claims, I would affirm the district court’s judgment dismissing those claims, I would not reach the question of legislative immunity, and I therefore do not join Part II.E of the majority opinion. I write separately only to note my disagreement with the majority’s analysis of individual Article III standing and with its conclusion that Plaintiffs may have a sufficiently close relationship with the students at the alternative school to satisfy the first prong of prudential standing.
As the majority correctly states, every plaintiff must satisfy both constitutional and prudential standing requirements in *224 order to bring an individual, first-party claim in federal court. To meet the constitutional minimum a plaintiff must show:
(1) it has suffered an “injury in fact” that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
Both Plaintiffs and Defendants agree that each of the teachers has suffered an injury; each lost his or her position at the alternative school and the attendant benefits. Supp. Br. for PI. at 8; Supp. Br. for Appellants at 9. This injury hits in the pocketbook, it is classically “concrete,” “particularized,” and “actual,” and therefore satisfies the “injury in fact” requirement. See Lujan, 504 U.S. at 560,112 S.Ct. 2130.
These individual injuries, however, are not “fairly traceable to [Defendants’] challenged action.” Plaintiffs claim that the Board violated the Establishment Clause when it outsourced the alternative school to Kingswood for 2003-2004. That decision is the “challenged action of the defendants.” That decision, however, did not cause the teachers to lose their jobs. Their jobs were terminated when the Board voted to abolish the Board-run alternative school, a decision separate and distinct from the Board’s later decision to contract with Kingswood. Both the Board’s legal authority and the undisputed record make clear that Plaintiffs would have lost their jobs regardless of where the Board decided to place the alternative school program.
As a matter of Tennessee law, nothing about the Board’s decision to abolish its own school compelled it to then contract with Kingswood. The majority is correct that the Board was required by Tennessee law to maintain at least one alternative school, see Maj. Op. at 206-07 n. 3, but ignores the fact that the Board had broad discretion as to how to fulfill that mandate. After abolishing its own school, the Board was free to contract with a school such as Kingswood, make an arrangement with another school board to provide a joint alternative school, or “send its suspended or expelled students to any alternative school already in operation.” Tenn.Code Ann. §§ 49-2-203(b)(12), 49-6-3402(a), 49-6-3402(h)(1) (2009). The wide range of options available to the Board is consistent with Tennessee’s legislative choice to “grant[ ] broad discretionary powers to the county Board of Education to ... govern[ ] the public schools as the Board deems advisable.” Morrison v. Hamilton County Bd. of Educ., 494 S.W.2d 770, 772 (Tenn. 1973); see State ex rel. Thompson v. Marion County Bd. of Educ., 202 Tenn. 29, 302 S.W.2d 57, 59 (1957); see also Tenn.Code Ann. § 49-2-203(a)(2) (2009).
The record bears out the distinction between the two Board decisions. The Board’s choice of Kingswood was clearly related in time to the decision to close the Board’s own alternative school. The
Board explored the pricing with Kings-wood before the meeting, and made the decisions in sequence at the July board meeting. Circumstantially, these actions are tied together. But the same undisputed record shows that the decisions were nonetheless distinct. At the July meeting the Board addressed agenda item six, the current alternative school program. After discussion, it voted to “delete the Alterna *225 tive School program.” J.A. Vol. I at 351. Then, the Board moved to agenda item seven, the alternative school proposal. It discussed the proposed Kingswood contract, heard from and questioned Kings-wood representatives, and only then voted to contract with Kingswood for one year. Id. at 352. While the decisions were close in time and subject-matter, they were not coterminous. The Board was free, after the first vote, to make whatever choice it wanted in the second — it possessed unrestrained discretion to reject the Kingswood plan and seek out another solution. The Board continued to debate the Kingswood proposal after the first vote abolished the current school. The second vote came only after the conclusion of that debate. But by that point, the damage to Plaintiffs was already done. Nothing in their circumstances changed or could change as a result of the second vote — their previous positions had been “deleted” by the first.
Considering whether the teachers’ injury is redressable further exacerbates the standing problem in this case. The majority claims that Plaintiffs’ “injury can be redressed by an order that the Board compensate the teachers for lost salary and benefits,” and that relief would, in the abstract, redress the injury of losing a job. Maj. Op. at 207. This case, however, is not abstract. Plaintiffs’ claim for monetary damages rests on an alleged Establishment Clause violation. As a matter of common sense, when the claim is that the government is establishing religion, the remedy is an injunction or a declaratory judgment telling it to stop. See, e.g., Salazar v. Buono, — U.S. -, 130 S.Ct. 1803,1812, 176 L.Ed.2d 634 (2010) (Kennedy, J., plurality opinion) (seeking an injunction); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 469, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (seeking declaratory judgment). Plaintiffs have not cited, and I have not found, any precedential case where monetary damages were awarded for an Establishment Clause violation. While Plaintiffs have sought a declaratory judgment in this case, the majority does not rely on that request for the simple reason that such a judgment would not redress Plaintiffs’ injuries. A declaratory judgment would stop any injury to students, but would not reinstate Plaintiffs’ jobs. As previously explained, the Board would still be free, after such a judgment, to outsource the program to another provider. Plaintiffs’ claim is essentially a contractual one smuggled in under the guise of an Establishment Clause claim. The disconnect between the available remedies and Plaintiffs’ injuries not only highlights the causation problem; it bolds, italicizes, and underlines it.
By articulating the “conduct of which the defendant complains” and comparing it to Plaintiffs’ injuries, one can clearly see that there is no causal connection between Plaintiffs’ injuries and the Board’s conduct that allegedly violated the Establishment Clause. The Board’s decision to abolish their alternative school was entirely within its authority, and it was that decision that terminated the teachers’ jobs. No one has claimed that abolishing the alternative school violated the Establishment Clause, and the majority reaches its conclusion only by erroneously turning two separate actions into one. Accordingly, I would hold that Plaintiffs do not have individual Article III standing, and would therefore not reach the prudential standing question.
I also briefly note my disagreement with the majority’s dicta that the teachers “may have a sufficiently close enough relationship to their students to satisfy the first prong of the test for third-party standing.” Maj. Op. at 208. Because Plaintiffs cannot show a hindrance to the students’ and parents’ bringing their own suit, it is un *226 necessary for the majority to opine on whether a close relationship existed. Even if it were necessary, however, the majority’s conclusion is dubious. Plaintiffs are not “forceful advocates” for their former students’ First Amendment rights in the same way that parents are advocates for their children. This is all the more true considering the nature of Tennessee’s alternative schools, which exist for students who have been temporarily removed from their primary school. See Tenn.Code Ann. § 49-6-3401 (2009). Such students may be in an alternative school for as little as a few days, hardly enough time to develop anything like a “close relationship.” Prospective or hypothetical relationships cannot sustain third-party standing. Kowalski v. Tesmer, 543 U.S. 125, 130-31, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (holding that no close relationship existed between attorneys and prospective clients). Furthermore, as explained above, the teachers’ rights and injuries are in no way “inextricably linked” with the students’ rights and alleged injuries. The teachers’ interest is to be compensated for losing their jobs. That is hardly the same as the students’ interest in not being compelled to worship. Deciding whether there is a “close relationship” requires a much more careful and fact-based analysis than that undertaken — unnecessarily—by the majority here. See id. at 130-31, 125 S.Ct. 564.
I would affirm the district court’s opinion on these issues and would further join Judge Rogers in concluding that Plaintiffs lack municipal taxpayer standing. I therefore respectfully dissent from the corresponding portions of the majority opinion.