‚SOLOMON N. SHANNON and the State of Tennessee on relation of Solomon N. Shannon *v.* BOARD OF EDUCATION OF KINGSPORT, Tennessee, etc., *et al.*

(*Knoxville,* September Term, 1955.)

Opinion filed December 9, 1955.

Rehearing denied February 3, 1956.

Z. ALEXANDER LOOBY, and AVON N. WILLIAMS, JR., both of Nashville, and CARL A. COWAN, of Knoxville, for appellants.

H. MARVIN PARSONS and WILSON & WORLEY, all of Kingsport, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant, Solomon N. Shannon, on relation of the State of Tennessee, filed his original bill in the Chancery Court of Sullivan County against the Board of Education of the City of Kingsport, seeking to enforce certain rights as a teacher in the public schools pursuant to the provisions of Chapter 76 of the Public Acts of 1951, Code, Sec. 2345.1 et seq., known as the "Teacher Tenure Act."

The bill charges that complainant Shannon was a resident citizen of Kingsport and had been employed as a regular teacher for six consecutive school years next pre-

ceding the school year, 1953-1954, by the Board of Education of said city.

The complainant holds the A. B. degree from an approved four year college; the M. A. degree from Fisk University; and two "Specialist in Education degrees" awarded by Columbia University Teachers College, New York City, and New York University, respectively. It also appears in the bill that he holds a "valid professional certificate based on four years' college training covering the subjects of grades taught by him."

It is next charged in the bill that on April 30, 1954, he received written notice from the defendant Board of Education advising him of his dismissal as a teacher; that said notice did not state any reason for his dismissal; that no charges had been preferred against him and hence no opportunity given him for a hearing upon any charges.

On May 2, 1954, the complainant wrote a letter to each member of the Board of Education protesting the action of the Board in dismissing him and expressed a desire to be heard upon any charges preferred against him; it is further charged that interested citizens of the community signed a petition addressed to the Board requesting that the complainant be granted a hearing and that the Board reconsider its action in dismissing the complainant. To all of these requests the complainant received no reply.

Paragraph (5) of the bill contains the following averments:

"That the complainant has made teaching his life work, having taught for twelve years, including seven years in the Kingsport City Schools as aforesaid. That the custom and policy of the defendant Board of Education is and has been for many years, that upon completion of three years as a regular

teacher in the City Schools of Kingsport a teacher becomes a permanent teacher; and that, in reliance upon said well-known custom and policy the complainant some time ago purchased a home in the City of Kingsport, on which a large indebtedness remains unpaid. The FHA loan which complainant obtained for the purchase of said home was conditional in part upon a statement given by the defendant Robinson to the Moore-Walker Insurance Agency in Kingsport, to the effect that complainant's work as a teacher was quite satisfactory and that said defendant Robinson saw no reason why complainant would not be retained in the future as a teacher in the City Schools of Kingsport.".

Complainant charges that the Board's action in dismissing him was void because he was not furnished a copy of any charges against him or advised as to his legal duties and rights.

The bill prays for a declaratory judgment, and that a decree be pronounced requiring the defendant Board to recognize him and reinstate him as a teacher in the School System of Kingsport, Tennessee. There is a prayer in the alternative that a writ of mandamus issue to require the Board to reinstate the complainant, etc. The bill prayed for general relief.

The defendants demurred to the bill upon the following grounds:

"1. There is no equity on the face of the bill.

"2. The bill shows on its face that its object is to review an action of the Board of Education of the City of Kingsport in failing or refusing to re-elect complainant as a teacher in its public schools, and a proceeding in Mandamus or for Declaratory Judgment does not lie for that purpose.

"3. Because Sect. 17, Ch. 76, Acts 1951 (Code Sect. 2345.17) prescribes the exclusive method of judicial review in the event of alleged denial of rights conferred thereunder.

"4. Because the bill shows on its face that this complainant's cause of action, if any he has, is asserted here too late, and is barred by the limitation prescribed in Sect. 17, Chap. 76, Acts 1951 (Code Sect. 2345.17).

"5. Because the bill shows on its face that complainant failed of reelection as a teacher before having acquired either 'permanent' or 'limited' tenure under the law, and that, therefore, the provisions of law relating to dismissal of teachers having acquired tenure are inapplicable as to him.

"6. Because the bill shows on its face that complainant has not acquired either 'permanent' or 'limited' tenure as a teacher under the law, and that he is therefore not entitled to judicial review of the action of the Board of Education in his failure of reelection.

"7. To paragraph IV of the bill, in that a 'custom and policy' of the Board of Education of the City of Kingsport with regard to reemployment of teachers if it had existed, could create no right in complainant to reemployment entitled to protection in law or equity."

The demurrer was coupled with an answer by the Board, the contents of which is not material in deciding the legal question raised by the original bill and the demurrer thereto.

The Chancellor sustained the demurrer and granted an appeal to this Court.

The following assignments of error are before the Court for consideration:

(1) The Chancellor erred in holding that the "Teacher Tenure Act" (Chapter 76, Public Acts of 1951) must be construed prospectively as to probationary service, and that consequently complainant had not acquired permanent tenure status under said Act.

(2) The substance of this assignment is that the Chancellor erred in holding that the Board of Education could terminate complainant's teaching contract during the probationary period without preferring written charges and affording him a hearing as required by the "Teacher Tenure Act."

(3) Contention is made that the attempted dismissal was illegal and void because of defendant's failure to furnish the notice referred to in the foregoing assignment.

(4) "The Chancellor erred in holding that defendant Board of Education was not bound by its well-known custom and policy to the effect that upon completion of three years as a regular teacher in the City Schools of Kingsport, a teacher becomes a permanent teacher."

(5) "The Chancellor erred in holding that complainant was precluded from judicial review by reason of failure to comply with the thirty-day period of limitations prescribed in the Teacher Tenure Act (Pub. Acts 1951, Ch. 76, Sec. 17; Code Sec. 2345.17)."

The case before us involves the rights of principals and teachers, etc., who are employed in the public schools of this State as provided by Code Section 2336 et seq., Article 6 (School Teachers), Section 2340.1, Acts of 1943, c. 147, and Article 6A (System of Tenure in Schools), Code Section 2345.1 et seq., 1952 Cumulative Pocket Supplement.

It will be noted that under Section 2340 of the Code, "All teachers must make a written contract with the county board of education at a fixed salary per month before entering upon their duties in any public elementary or high school." Both teachers and county boards are subject to a fine of $25 for a failure to do so.

Section 2340.1 reads as follows:

"Teachers in service and under contract in the public elementary and high schools of Tennessee shall continue in such service until they have received written notice, from their board of education, of their dismissal or failure of reelection at least thirty days prior to the close of the school term; provided the board of education may transfer any teacher from one position to another at its option; provided that nothing contained in this section of this act shall affect any rights that may have accrued, or may hereafter accrue, in behalf of any teachers or principals in any county under any act providing a tenure of office for said teachers and principals."

The foregoing Section of the Code is often referred to by counsel as a teacher's "Continuing Service Contract." The sharply controverted issue in this case is whether or not the complainant had acquired tenure rights at the time the defendant Board of Education declined to renew his teaching contract.

The contention of the complainant is that certain tenure rights accrued to him pursuant to the provisions of Chapter 76, Acts of 1951, known as the "Teacher Tenure Act." This Act was approved on March 1, 1951, and became effective on July 1, 1951. The complainant's bill shows that his contract of employment terminated by written notice in April 30, 1954, effective at the end of the current school year. He was not dismissed or dis-

charged by the Board. The Board simply declined to re-employ him for the year, 1954-1955. It is urged upon us by complainant's counsel that this is equivalent to a dismissal and the Court should so declare.

The defendant Board by demurrer says: "It is apparent on the face of the bill that complainant has not had the requisite service for 'tenure' after the effective date of the Act, and could not be held to have acquired 'tenure' except by giving the Act a retroactive construction."

The Chancellor held that the Act was prospective only and that the entire period of probationary service must have been served following the effective date of the law in order to confer tenure. This brings us to a consideration of the first assignment of error.

■ Until the passage of the Teacher Tenure Act the law was silent on the question of tenure of teachers. The 1943 Act, Code Section 2340.1, providing for continuation of service under an implied contract, in the absence of a written notice delivered thirty (30) days before the "close of the school term," refers to *any tenure rights that may have accrued, or may hereafter accrue* in behalf of teachers or principals. But this statute cannot be construed to confer rights which at that time were unknown to the law. A fair and reasonable construction of the language "now or hereafter to be accrued" must refer to such tenure rights as subsequent statutes may expressly define and confer. In other words, the teacher, principal, or other employee must comply with the provisions of the tenure act. They had no tenure status prior to the Act of 1951, other than contract rights.

■ Now the statute, Code Section 2345.1 et seq., defines tenure, such as "Permanent tenure," "Limited tenure," and "Probationary" which need not be quoted in-

asmuch as the demurrer admits that the complainant had served continuously for more than seven years prior to the termination of his teaching contract, and possessed all other statutory requirements. But he had not acquired a tenure, permanent or otherwise, until he had served a probationary period of three years, and the school board had been given an opportunity to consider the question of his status as a permanent teacher. A liberal construction of the Tenure Act does not require the Court to hold that the legislative intent was to automatically confer tenure status upon all teachers and principals of schools with as much as three years' service prior to the effective date of the Act, and without full knowledge of the said boards of education.

We are furthermore of opinion that it was never the intention of the Legislature to deprive local school boards of their right, as well as responsibility, to determine the fitness of a teacher for tenure status. We are sustained in this statement by Code Section 2345.1, subsection (6), which reads as follows:

" 'Probation' is a condition and period of trial during which a teacher is under observation to determine his fitness for tenure status."

The opinion of the Chancellor that the Tenure Act is not retroactive, but prospective only, is sustained by the following authorities.

In Sutherland on Statutory Construction, 3rd Ed., Section 2201, it is said: "Retrospective operation is not favored by the courts, however, and a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application."

In 78 C. J. S., Schools and School Districts, Sec. 180, p. 1013, the rule is thus stated: "Unless an intention to

the contrary on the part of the legislature clearly appears, a tenure statute will be given a prospective effect only and not a retrospective effect''.

In *Montgomery* v. *Board of Education of Los Angeles,* 137 Cal. App. 668, 31 P. (2d) 243, it was held that a teacher did not acquire any rights as a permanent teacher by reason of service prior to the adopting of the tenure law. To the same effect is *Board of Education of City of Las Vagas* v. *Boarman,* 52 N. M. 382, 199 P. (2d) 998; *Nichols* v. *Board of Education of Jersey City,* 9 N. J. 241, 87 A. (2d) 894, and *Carter* v. *Kalamejski,* 255 App. Div. 694, 8 N. Y. S. (2d) 926, affirmed 280 N. Y. 803, 21 N. E. (2d) 692. In the foregoing cases dealing with tenure it is held immaterial that the statute is remedial.

The tenure statute contains no expression to indicate that it was to have a retroactive effect. Had the Legislature so intended it would have said so. In *Molloy* v. *City of Chattanooga,* 191 Tenn. 173, 232 S. W. (2d) 24, 27, 404, opinion by Tomlinson, Justice, it was held:

"A statute will not be given retroactive effect in the absence of such express declaration or necessary implication, nor 'unless that intention has been manifested by the most clear and unequivocal expression.'"

Other cases to the same effect are *Jennings* v. *Jennings,* 165 Tenn. 295, 54 S. W. (2d) 961; *King* v. *Vestal Lumber & Mfg. Co.,* 158 Tenn. 12, 11 S. W. (2d) 852.

■ The cases cited by appellant, *State ex rel. Grandstaff* v. *Gore,* 182 Tenn. 94, 184 S. W. (2d) 366, 368, and *Dowlen* v. *Fitch,* 196 Tenn. 206, 264 S. W. (2d) 824, 41 A. L. R. (2d) 791, to sustain a retroactive construction, deal with procedural changes as to certain existing rights. Thus in *State ex rel. Grandstaff* v. *Gore* the application of the habitual criminal statute was under consideration.

It was held: "If the Legislature had intended to relieve those previously convicted of a higher grade of larceny of the consequences of their crime" *it would have said so.* Speaking further it was held in language applicable to the case at bar:

"Laws should never be considered as applicable to cases which arose before their passage, unless Legislature clearly declares such intention."

"An act is construed so as to give it positive, not retroactive, force, unless, retroactive purpose is plainly expressed or necessarily implied." (The word, *positive,* is apparently a misprint. The writer evidently intended to use the word, *prospective.*)

*Dowlen* v. *Fitch,* supra, deals with the question of venue in tort cases and is not controlling here. Also *State ex rel. Timothy* v. *Howse,* 132 Tenn. 452, 178 S. W. 1110, is an "ouster" suit to remove a city official as provided by Chapter 11, Acts of 1915, and is not applicable to this case.

■ Complaint, appellant's next contention (assignments two and three), is made that if he had not acquired tenure when the Board refused to renew his contract that as a probationary teacher he was entitled to reemployment as a matter of right unless he was discharged after due notice of written charges, etc. Code Section 2345.15 and 2345.16. In other words his insistence is that his standing as a probation teacher was, as a matter of law, the same as if the Board had discharged him under a written contract before the end of the school year, Code Section 2340.1, Acts of 1943. If the position of the complainant is sound the Legislature did an idle thing in making provision for a trial period as set out in 2345.1 (6) of the Code, Section 49-1401, subsection (6), T. C. A., "to determine his fitness for tenure". We are not per-

mitted, even under a liberal construction of the Act, to hold that the Legislature intended to make no distinction between probationary teachers and permanent tenure teachers.

The exact question now before us was considered by the Court of Appeals in *Brown* v. *Newman,* 282 S. W. (2d) 677, appealed from the Chancery Court of Sumner County, wherein it was held (this Court denied certiorari) that the Teacher Tenure Act should be construed prospectively only. The facts, which gave rise to this case, are identical with the case at bar. It seems that prior to the effective date of the Tenure Act Brown "had been employed by the School Board and had taught school in Sumner County for seventeen (17) years prior to the termination of his contract." He was given written notice of the fact by letter from the County Superintendent more than 30 days before the close of the school year. He was thus not reemployed by the Board. The Court of Appeals affirmed the Chancellor's decree that the said tenure statute of 1951 was prospective, and that Brown had not acquired tenure status under the Act.

We find no merit in the appellant's fourth assignment of error complaining that he had acquired a permanent status as a teacher in the City Schools of Kingsport as a result of a custom and policy of the Board to the effect that upon completion of three years as a regular teacher he thus was recognized as having a permanent contract. It is argued that this was admitted by the demurrer, and hence his contract could not be terminated in the absence of written notice as required by statute. The counsel cite no authority to support this contention. Custom and policy of the Board cannot in any circumstances supersede the plain provisions of the statute which make it mandatory that all teachers' con-

tracts be in writing and a failure to execute such a contract is a misdemeanor.

■ Contention is made under the fifth assignment that the Chancellor erred in denying the complainant a judicial review of the action of the Board in that no written notice was given him of his "dismissal" as prescribed in the "Teacher Tenure Act". The counsel seek to bring the complainant within the purview of the law which provides for judicial review of "dismissal" of regular teachers prior to the termination of their written contract. Code Section 2325 (10). We hold that there is a wide difference between "dismissal" and failure of reemployment by the Board. Thus in 47 Am. Jur. page 387 (cited by the Chancellor), it is said: "failure to renew a teacher's contract does not constitute dismissal of the teacher so as to come within the purview of statutes prescribing the cause and manner of dismissal."

■ Where a teacher has not acquired tenure status his right to a judicial review of any action of the Board in not reemploying him is not authorized by law. He is not entitled to reelection as a matter of right beyond a contract period. As pointed out by the Chancellor, all of the cases involving dismissal under Code Section 2325 (10) have been those teachers who were discharged during the contract period. In *Morley* v. *Power,* 73 Tenn. 691, Morley was discharged without notice prior to the expiration of his contract. See also to the same effect *Butcher* v. *Charles,* 95 Tenn. 532, 32 S. W. 631; *Thompson* v. *Gibbs,* 97 Tenn. 489, 37 S. W. 277, 34 L. R. A. 548; *Little* v. *Carter County Board of Education,* 24 Tenn. App. 465, 146 S. W. (2d) 144; *Hayslip* v. *Bondurant,* 194 Tenn. 175, 250 S. W. (2d) 63. We have been cited to no case holding that a teacher who has failed of reemploy-

ment for another school year is entitled to notice and the right to a judicial review.

The case of *McSherry* v. *City of St. Paul*, 202 Minn. 102, 277 N. W. 541, relied on by appellant, is not in point because under the Minnesota statute, M. S. A. Sec. 130.22 et seq. it is expressly provided that probationary teachers shall receive written notice of the cause for discharge. The same is true of *Donahoo* v. *Board of Education*, 413 Ill. 422, 109 N. E. (2d) 787, 789, wherein the court held: "Teachers' rights were preserved by the Tenure Law both in their probationary stage and after they had passed from it into more permanent status."

Conceding as we do that the primary purpose of the Teachers Tenure Act was to protect teachers from "unjust dismissal" by arbitrary action of boards of education, we cannot, under the guise of giving the Act a liberal construction, provide for a form of judicial review where the teacher has not acquired tenure status, and is not under contract for a definite period.

We are not unmindful of the opportunity of principals of public schools and boards of education to abuse their authority and in many instances deal unjustly with those who are subject to their authority. It may have happened in the instant case. But the courts are not privileged to intrude upon the legislative prerogative in an attempt to correct alleged abuses by way of a liberal construction of a statute. We have dealt with every issue raised by the complainant's counsel with an unprejudiced mind. In fact we have had a sympathetic attitude toward his cause of action because of the plight in which he finds himself, and for which he is apparently blameless. However, if the Legislature has not granted him protection from an injustice, the courts cannot do so.

The assignments of error are overruled, and the decree of the Chancellor is affirmed.

## ON PETITION TO REHEAR.

Counsel for the relator have filed an exhaustive petition to rehear, complaining of numerous errors in the Court's opinion, as well as misapprehension as to petitioner's contentions.

With due regard to the insistence of petitioner, we did not misconstrue Code Section 2340.1 as applicable to the primary issue involved. Our construction of the words "now or hereafter employed", appearing in Code Section 2345.3 is made the subject of further argument by petitioner that the Tenure Act shold be given a retroactive effect. We concede that the issue is debatable but cannot agree that our conclusion was incorrect in the light of what we consider controlling authority, and more especially *Brown* v. *Newman,* Tenn. App., 282 S. W. (2d) 677.

Another alleged ground for rehearing is that the Court was in error in citing cases as relied on by petitioner, to wit, *State ex rel. Grandstaff* v. *Gore,* 182 Tenn. 94, 184 S. W. (2d) 366, and *Dowlen* v. *Fitch,* 196 Tenn. 206, 264 S. W. (2d) 824, 41 A. L. R. (2d) 791, such cases being cited by the defendant Board of Education. While the opinion erroneously recites that the foregoing cases were "cited by appellant" (petitioner here), it is manifestly an error in dictation. They clearly support the view of the respondent Board of Education that the Act should be given a prospective rather than a retroactive construction. This error consists of using the wrong word in dictating the opinion, which clearly appears by a cursory examination of the text.

It is insisted that we should not follow our decision in *State ex rel. Grandstaff* v. *Gore,* supra, because "the statute was intended to cover a class of teachers entitled to the benefits conferred by the Act." In support of the contention, which is a reargument of the determinative legal question, counsel again rely upon cases from foreign jurisdictions, and especially that of *Andrews* v. *Union Parish School Board,* La. App. 1938, 184 So. 574. The petitioner's counsel then proceed to discuss certain cases, which were cited in the original opinion as supporting a *prospective construction* of an alleged Tenure Act, *Montgomery* v. *Board of Education of Los Angeles,* 137 Cal. App. 668, 31 P. (2d) 243, and others, and attempts to distinguish them from the Tenure Act of this State. It is true there is a diversity of opinion in these cases but we are dealing with our own statute as determining the legislative intent; and, as observed, if the Legislature had intended the Act to cover specific cases, such as the one now before us and *Brown* v. *Newman,* supra, it would have said so and not left the issue open to judicial construction.

It is next insisted that, "The Supreme Court is not bound to decide this case against appellant (petitioner here) by reason of its denial of certiorari in *Brown* v. *Newman,*" citing and relying on *Bryan* v. *Ætna Life Ins. Co.*, 174 Tenn. 602, 130 S. W. (2d) 85, and *Lingner* v. *Lingner,* 165 Tenn. 525, 56 S. W. (2d) 749.

We have not ruled the legal question "against appellant" solely upon the authority of *Brown* v. *Newman.* The case, however, is directly in point and, needless to say, this Court gave it careful consideration on petition for certiorari and declined to grant the writ without filing a written opinion. From a purely technical point of view we are not bound by the opinions of the Court

of Appeals. But these opinions are viewed with the greatest respect and will not be lightly overruled; and certainly not when the views expressed by that court are in full accord with sound reason as well as the weight of authority. For this reason we denied certiorari in *Brown v. Newman.*

In *Bryan* v. *Ætna Life Ins. Co.,* supra, the court used this language [174 Tenn. 602, 130 S. W. (2d) 88]:

"We have repeatedly pointed out that a mere denial by this court of a writ of *certiorari* to the Court of Appeals *does not commit us to all the views expressed in a particular opinion.* We are primarily concerned on such application with the result reached." (*Emphasis* supplied.)

In the Lingner case, supra, it was held:

"The Supreme Court will no more hesitate to investigate again a question of practice decided by the Court of Appeals in a case in which the writ of *certiorari* was denied than it would hesitate so to do in a case disposed of on direct appeal."

Where, as in the instant case, the Court of Appeals has given a sound interpretation of a statute and construed it according to the manifest intention of the Legislature, we are not disposed to give it a different construction.

The last error complained of relates to the question of petitioner's right to a judicial review and for the writ of mandamus to reinstate him as a teacher in the public schools of Kingsport. This question was fully dealt with in the original opinion and, feeling that it was correctly decided, there is no reason to again review it.

The petition to rehear is denied.