STATE OF TENNESSEE ex rel. G. TILLMAN STEWART, etc.

*v.*

TOMMY LUNSFORD et al.

(*Jackson,* April Term, 1960.)

Opinion filed May 4, 1960.

JOE A. APPLEBY, Lexington, for appellant.

BARRY & WALKER, Lexington, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

The question for determination in this case is whether or not the appellant, G. Tillman Stewart, has qualified so that the Teachers Tenure Act (Chapter 76, Public Acts of 1951) as now carried in the Code, Sections 49-1401 to 49-1420, T.C.A., applies. The Chancellor held that he had not qualified for tenure status under the Act. An appeal has been seasonably perfected, briefs filed and able arguments heard. We now have the matter for determination.

Stewart holds a professional teachers certificate of the State of Tennessee by reason of having graduated from the University of Tennessee. He has not taught as a classroom teacher in Henderson County since the enactment of the Tenure Statute in 1951, or during a period that would qualify him for tenure status. He has not been connected with the school system from 1939 until he was elected by popular vote by the people of the coun-

ty as Superintendent of Schools in the summer of 1954. He took office the 1st of September, 1954, and served a four-year term, at which date he was defeated by popular vote. After this defeat he made application for a teaching position in one of the high schools in the county, but was not elected by the Board of Education.

The case is predicated entirely upon the terms of the statute. Section 49-1401, T.C.A., gives the definition of various words and terms that are used in the Act. In the first subdivision under this Section the word "teacher" is defined to include teachers, supervisors, principals, superintendents, etc. Thus it is Stewart's position that since he was Superintendent of the County Schools for a period of four years (1954 to 1958) that he under this definition, that is, that the Superintendent is a teacher under the terms of the Act, and under other provisions of the Act, was eligible and entitled to permanent tenure status.

The general purpose of this Teacher Tenure Act (one under which the claim is here made) was discussed in some detail in *State v. Yoakum,* 201 Tenn. 180, 297 S.W. 2d 635, and again in *Shannon v. Board of Education,* 199 Tenn. 250, 286 S.W.2d 571. In view of our discussion of this Act and its purposes, etc., it will not be again necessary to here go into any detail in reference to the purposes of the Act. Among other things, we said in *State v. Yoakum,* supra, that "In solving this question, as in all questions of statutory construction, the main object is to see what the legislative intent was as disclosed by the provisions of the act in relation to the subject of legislation and what was the general purpose to be accomplished." [201 Tenn. 180, 297 S.W.2d 640.]

Then in *Shannon v. Board of Education,* supra, [199 Tenn. 250, 286 S.W.2d 575] this Court conceded that the primary purpose of this Act was to protect teachers from "unjust dismissal" by arbitrary action of the Board, etc. We recognized in this case that the Act was entitled to a liberal construction but in giving it this construction we could not read into the Act things that were not there, but must take the Act as passed by the Legislature. In other words we held in that case that giving it this liberal construction was not "to hold that the legislative intent was to automatically confer tenure status upon all teachers and principals of schools with as much as three years' service prior to the effective date of the Act, and without full knowledge of said boards of education." In this case we too held that the Act was prospective only and not restrospective.

With the foregoing as a background we now come to the consideration of Section 49-1402, T.C.A., with reference to the instant case. This Section governs the two types of tenure. The first of which is permanent tenure. One to acquire permanent tenure must have a degree from an approved four-year college; (2) must hold a valid professional certificate based on not less than four years college training covering the subjects that he is going to teach; (3) must have completed a probationary period of three school years, or not less than twenty-seven months of teaching, "within the last five (5) year period, and the last year to be employed as a regular teacher", and (d) must be reemployed by the board for service after the probationary period. The second paragraph of this Act defines limited tenure and what is necessary for limited tenure. This second provision of this Section is not applicable here.

Stewart comes within the definition, that is, is a Superintendent or teacher. He has shown that he has a degree from a school and that he holds a valid certificate. Then, too, we would say that he has completed the probationary period under the terms of the Act by serving as Superintendent for this period, but he has not complied with the latter provision of this permanent tenure status, that is, he has not been "reemployed by the board for service after the probationary period." Thus it is that not having complied with all the essentials of the requisites for tenure status he does not come within the Act so that he can take advantage of the terms of the Act. The board refused to employ him as a teacher after his four years' service as Suprintendent.

The following Section of the Code, 49-1403, T.C.A., sets forth what a probationary period is, which in effect uses almost the identical terms of what we designated as (3) in discussing the preceeding Code Section, and this Section further says that after completing this probationary period 'any teacher who is reemployed or retained in the system is entitled to the tenure status for which she is qualified by college training and certification." Thus we see in at least two instances the Legislature has used the plain and unambiguous language that one to qualify under the permanent Tenure Teachers Law must do certain specified things for a certain period of time and then after completing this probationary period must be reemployed or retained in the system to comply with the terms of this Act. There is, of course, a very obvious reason for this fact. This reason being that the probationary period, as is defined in Section 49-1401, T.C.A., "is a condition and period of trial during which a teacher is under observation to determine his fitness for

tenure status.'' Thus it is clear that the purpose of the Legislature was not to make a teacher entitled as a matter of right to permanent tenure status after completing this probationary period unless he or she was retained or reelected to the position.

What we have said above complies with the general law under similar statutes in many other states. See 78 C.J.S. Schools and School Districts sec. 5, p. 1023, wherein in part it is said: ''So, under a statute to such effect, reemployment after completion of the probationary or preliminary period is essential to give the teacher a status and rights of permanent tenure; * * *.'' Among other cases cited is that of *Dugan v. School District,* Supreme Court of Colorado, as reported in 128 Colo. 594, 265 P.2d 998, 1000, where among other things that court said: ''It is provided in the Act that teachers in first-class school districts who 'shall be re-elected after the passage of this Act, shall without further election have stable and continuous tenure of his or her position during efficiency and good behavior.' In order to acquire 'stable and continuous tenure' the Act requires an affirmative act on the part of the school district 'after the passage of' the Act. As expressed therein this had to be the re-election of the teacher.''

Thus as we have seen under reason and authority the appellant has not acquired permanent tenure status herein and as a result thereof the decree of the Chancellor must be affirmed.