**Billy Joe SNELL, Appellant,**

v.

**Clifford P. BROTHERS, Jr., et al., Appellees.**

Supreme Court of Tennessee.

Sept. 8, 1975.

Charles Hampton White, Cornelius, Collins, Higgins & White, Nashville, for appellant.

William T. Sellers, Smith & Sellers, Murfreesboro, for appellees.

## OPINION

BROCK, Justice.

The issue in this case is whether the appellant schoolteacher has acquired tenure status under the Teacher Tenure Law, T.C.A. § 49–1401 et seq.

Mr. Billy Joe Snell was first employed by the Rutherford County Board of Education in August, 1970, to teach English, science, and physical education and to coach basketball and baseball at Rockvale School. He continued in that position until the end of the 1971–72 school year. During the 1972–1973 academic year he taught boys' physical education and coached golf and boys' basketball at Riverdale High School in Rutherford County. His teaching salary that year was $7,750 with a $1,705 coaching supplement.

On April 5, 1973, Mr. Carl Buckner, principal of Riverdale High School, informed Snell that he was giving him a low performance evaluation and recommending to Mr. Clifford P. Brothers, Jr., Superintendent of Schools of Rutherford County, Tennessee, that Snell be dismissed or transferred. On the same day Snell met with Brothers, and on April 6 the Superintendent sent Snell a letter notifying him "as required by the T.C.A. 49–1306, 'Continuing Contract,'" that his services would not be needed for the following school year. Brothers' action was of no legal effect be-

cause it was not authorized by the Rutherford County Board of Education which did not consider the election of teachers for the 1973–74 school year until its meeting on April 26, 1973. At that meeting the Board voted to uphold the recommendation of Principal Buckner and Superintendent Brothers to terminate Snell's employment. Brothers notified Snell of the Board's action by letter dated April 27, 1973. Subsequently Snell requested a hearing before the Board and was invited to attend their meeting on May 22, 1973; at that meeting the Board reaffirmed his discharge without charges as an untenured teacher, standing on their decision of April 26, 1973. In a letter to Brothers dated June 21, 1973, Buckner charged Snell with unprofessional conduct, inefficiency and incompetence and recommended his termination pursuant to the Teacher Tenure Law, T.C.A. § 49–1401 et seq. On July 18, 1973, Snell contacted Superintendent Brothers to ascertain his status as a schoolteacher in Rutherford County. Brothers responded with a letter on the same date advising him that his employment had been terminated because of the action of the Board on April 26, 1973, and because of the June letter of Mr. Buckner, which he enclosed. The Board, however, has never taken any action on the charges in Buckner's letter and continues to regard Snell as an untenured teacher.

Snell commenced an action in the Chancery Court of Rutherford County, Tennessee, in August, 1973, for reinstatement to his teaching and coaching position and monetary compensation for his wrongful termination. The Chancellor held that he was not entitled to reinstatement but allowed him $7,455 in damages. From the first holding Snell appeals.

■ The Teacher Tenure Law, T.C.A. § 49–1401 et seq., is designed to protect schoolteachers from arbitrary demotions and dismissals. State v. Yoakum, 201 Tenn. 180, 297 S.W.2d 635 (1956). A teacher who has permanent tenure can only be discharged for incompetence, inefficiency, neglect of duty, unprofessional conduct or insubordination. T.C.A. § 49–1412. He is entitled to written notice of the charges and to a hearing before the school board at which he may appear, present witnesses, and plead his cause in person or by counsel. T.C.A. § 49–1415 and 49–1416. The Statute also gives the teacher the right to judicial review. T.C.A. § 49–1417.

An untenured teacher, however, can be discharged without cause simply by written notice of dismissal or failure of reelection from the board of education. Such notice under the Teachers', Continuing Contract Law must be received prior to April 15 to be effective for the next succeeding school year. T.C.A. § 49–1306. The Continuing Contract Law does not apply to teachers who have acquired permanent tenure status and they are not subject to reelection or dismissal under its provisions. T.C.A. § 49–1418.

The Rutherford County Board of Education did not comply with statutory procedure either for tenured or untenured teachers when it dismissed Snell. It missed the cut-off date of April 15 for notifying nontenured teachers of failure of reelection and it never purported to follow the procedure for dismissal of tenured teachers, T.C.A. § 49–1412 et seq. The only issue is the remedy. The Board contends that Snell had not attained permanent tenure status when it voted to terminate his services on April 26, 1973, and consequently he should only be awarded damages for breach of his employment contract for the 1973–74 school year. Snell, however, maintains that he did acquire permanent tenure prior to his purported termination and is therefore entitled to damages and reinstatement.

The Teacher Tenure Statute establishes four prerequisites to the attainment of permanent tenure:

"49–1402. There shall be two (2) types of tenure for teachers now or hereafter employed in the public schools of Tennessee, as follows:

(1) 'Permanent tenure' shall apply to any teacher who (a) has a degree from an

approved four (4) year college, (b) holds a valid professional certificate based on not less than four (4) years college training covering the subjects or grades he is teaching, (c) has completed a probationary period of three (3) school years or not less than twenty-seven (27) months within the last five (5) year period, and the last year to be employed as a regular teacher, and (d) is reemployed by the board for service after the probationary period."

The probationary period constitutes a "trial during which a teacher is under observation to determine his fitness for tenure status." T.C.A. § 49–1401(6).

T.C.A. § 49–1403 provides:

"Any teacher, otherwise qualified for 'permanent tenure' status or 'limited tenure' status shall serve three (3) years or not less than twenty-seven (27) months within a five (5) year period as a probationary teacher before acquiring 'permanent tenure' status or 'limited tenure' status.

"Upon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status for which she is qualified by college training and certification; provided that the superintendent shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status."

The parties agree that Snell had the required college degree and professional certificate on April 26, 1973. The disputed questions are whether he had completed his probationary period on that date and had been "reemployed" or "retained in the system" so as to achieve permanent tenure status.

Of the first issue we agree with the Chancellor that Snell had completed his probationary period; the Chancellor reasoned that Snell had taught two full school years comprising twenty school months from 1970 to 1972 and had served the other seven months during the 1972–73 school

year. His conclusion is also supported by *Brown v. Newman*, 39 Tenn.App. 341, 282 S.W.2d 677 (1955) and *Ryan v. Anderson*, 481 S.W.2d 371 (Tenn.1972).

The second question is much more difficult. The Board contends that permanent tenure is not earned until the Board has had the opportunity to consider the teacher's capabilities and performance and has taken *positive* action to reemploy him. Snell, relying on the Continuing Contract Law, T.C.A. § 49–1306, avers that the mere passage of time resulted in his reemployment and retention in the system. The relevant part of that Section provides:

"49–1306. Teachers in service and under control of the public elementary and high schools of Tennessee shall continue in such service until they have received written notice, from their board of education, of their dismissal or failure of reelection. Said notice must be received prior to April 15 to be applicable to the next succeeding school year; provided the board of education may transfer any teacher from one position to another at its option; provided that nothing contained in this section shall affect any rights that may have accrued, or may hereafter accrue, in behalf of any teachers or principals in any local school system under any law providing a tenure of office for said teachers and principals. . . ."

It is well established that if the Board had voted to dismiss or not to reelect Snell and had sent him notice prior to April 15, 1973, he would not have acquired tenure nor would he have had a cause of action for breach of his employment contract. *Ryan v. Anderson, supra; Shannon v. Board of Education*, 199 Tenn. 250, 286 S.W.2d 571 (1956); *Brown v. Newman, supra*. However, we have discovered no Tennessee case in which the Court has considered the effect on tenure rights of the failure to send such notice.

The Board maintains that statements in *Ryan v. Anderson, supra, Shannon v. Board*

*of Education, supra,* and *Stewart v. Lunsford,* 207 Tenn. 33, 336 S.W.2d 20 (1960), support its position on this issue.

In *Ryan v. Anderson, supra,* the complainant was a teacher in Hawkins County who lost his permanent tenure status by failing to give proper notice of resignation when he accepted a postmastership in Persia, Tennessee. He subsequently returned to teaching and completed a second probationary period of twenty-seven months but was notified within the time prescribed by T.C.A. § 49–1306 that he had not been reelected by the school board for the following year. The Court concluded:

"While complainant was employed by the Hawkins County Board of Education for a sufficient length of time to complete the probationary period referred to in T.C.A. § 49–1402(1)(c), this fact alone does not establish that complainant has satisfied all of the requirements to attain permanent tenure status. Beyond any peradventure of doubt the record in the instant case discloses that complainant was not re-employed by the Hawkins County Board of Education after the probationary period. Under our statute complainant could not reacquire permanent tenure status in the Hawkins County School System until he was re-elected by the Board of Education." (Citations omitted.) Id. 481 S.W.2d at 375.

In *Shannon v. Board of Education, supra,* the Court was faced with the question of whether the Teacher Tenure Law, T.C.A. 49–1401 et seq., should be applied retroactively, thus granting permanent tenure to most teachers already within the school system at the time of its enactment in 1951. In response to this issue the Court stated:

"But he had not acquired a tenure, permanent or otherwise, until he had served a probationary period of three years, and the school board had been given an opportunity to consider the question of his status as a permanent teacher. A liberal construction of the Tenure Act does not

require the Court to hold that the legislative intent was to automatically confer tenure status upon all teachers and principals of schools with as much as three years' service prior to the effective date of the Act, and without full knowledge of the said boards of education.

"We are furthermore of opinion that it was never the intention of the Legislature to deprive local school boards of their right, as well as responsibility, to determine the fitness of a teacher for tenure status." Id. 286 S.W.2d at 575.

The Court concluded that the statute should be applied prospectively only and that all teachers would be required to complete a probationary period after its enactment so that local school boards would have a full opportunity to observe and evaluate their performance. Mr. Shannon did not satisfy the tenure requirements because in his third probationary year after the passage of the statute he received notice of his failure of reelection within the time allotted by T.C.A. § 49–1306. Despite the differences between the case at bar and the *Shannon* and *Ryan* cases we believe that the above quoted statements do imply that local school boards must take affirmative action in determining the fitness of teachers for tenure status.

In *Stewart v. Lunsford, supra,* Stewart was elected by popular vote to a four year term as Superintendent of Schools in Henderson County. He was defeated when he ran for a second term. Whereupon he applied for a teaching position in one of the county high schools, but was not elected by the board of education. Because superintendents are classed as teachers in the Teacher Tenure Act, Stewart argued that he had attained permanent tenure status by serving as superintendent for four years. The Court held, however, that he did not have tenure because he had not been "reemployed" by the board. The Court concluded:

"Thus it is clear that the purpose of the Legislature was not to make a teacher

entitled as a matter of right to permanent tenure status after completing this probationary period unless he or she was retained or reelected to the position." Id. 336 S.W.2d at 22.

Although Stewart technically completed his probationary period of three years or twenty-seven months he was never a conditional employee under observation by the board of education to determine his fitness as was Snell; the board never had the power to dismiss him because he was elected by popular vote. Nonetheless, we believe this case indicates that a teacher does not acquire permanent tenure status by mere passage of time.

We have concluded that Snell did not achieve permanent tenure status because the Board did not affirmatively act to reemploy him as required by T.C.A. § 49–1403. Its failure to notify him by April 15 that he had not been reelected resulted only in his contract being continued one more year under the Teachers Continuing Contract Law, T.C.A. § 49–1306; for breach of that contract he is entitled to damages.

We have considered respectable authority from other states which reached a contrary conclusion. See Robb v. School District, 28 Colo.App. 453, 475 P.2d 30 (1970); Whittington v. Barbour County Board of Education, 250 Ala. 692, 36 So.2d 83 (1948). But, we are convinced that our own statutes and court decisions dictate the result we have reached.

Accordingly, we affirm the decree of the Chancellor. All costs of this appeal will be taxed against the appellant, Billy Joe Snell.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.