IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2021 Session

## LACY MCALLISTER v. LAWRENCE COUNTY SCHOOL SYSTEM BOARD OF EDUCATION, ET AL.

**Appeal from the Chancery Court for Lawrence County**
**No. 19-18834          J. Russell Parkes, Judge**

_____

**No. M2021-00082-COA-R3-CV**
_____

This case involves a challenge to a decision to non-renew the employment of a non-tenured teacher. The plaintiff sued the defendants for breach of her one-year contract of employment. The trial court granted the defendants' motion for summary judgment and dismissed the plaintiff's claims with prejudice. The plaintiff appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Richard L. Colbert and C. Joseph Hubbard, Nashville, Tennessee, for the appellant, Lacy McAllister.

W. Carl Spining and Emmie Futrell, Nashville, Tennessee, for the appellees, Lawrence County School System Board of Education and Johnny McDaniel.

## OPINION

### I. Background

Lacy McAllister ("Teacher") was employed by the Lawrence County School System ("BOE" or "Defendants") as a non-tenured Response to Intervention ("RTI")

Coordinator.[1]  In contrast to a regular teaching position, an RTI Coordinator tests students, compiles and analyzes test data, leads meetings and gives presentations to teachers regarding intervention materials and methods, communicates with students, parents, teachers and staff, implements the county's RTI program at the school and targets intervention of students through classroom instruction.  During the 2016-2017 school year, Teacher, the first person to serve as the RTI Coordinator at Summertown High, was evaluated on two occasions using the General Educator Evaluation rubric utilized for classroom teachers.  Principal Brent Long conducted a pre-conference and a post-conference on each occasion.  Teacher received scores of 4 or "above expectations."[2] During the 2017-18 school year, Teacher anticipated being observed and evaluated in the same fashion.  BOE asserts that for the 2017-2018 school year, however, the Summertown High officials decided that the School Services Personnel evaluation rubric would be utilized for Teacher's evaluation.

Unaware of the change in evaluation methods, by October 2017, Teacher became concerned that she had not been observed.  Principal Long departed the school in December without evaluating Teacher as he had done the previous year.  After Patty Franks was hired as the new principal, from January to May 2018, Teacher was not observed in the manner utilized previously.  In a later deposition, Principal Franks related as follows:

> I explained to her that with . . . the school support service rubric [not the classroom teacher rubric], that her job, as a whole, is observed all the time. So her interaction with teachers, her interactions with parents at meetings, the way that she uses the data.  She's responsible for gathering the data, somehow she uses the data.  All of that is part of her job, and so that's part of that rubric.

On May 22, 2018, Teacher was notified that she would be dismissed and her employment terminated "at the close of the present school year-May 30, 2018."[3]  Principal Franks noted problems with Teacher's professionalism and preparation.  Director of Schools Johnny McDaniel later testified that he relied on the principal's recommendation that Teacher be dismissed.  He acknowledged never reviewing the evaluation results or any

---

[1] She taught in the Lawrence County School System from the beginning of 2013-14 school year through the end of the 2017-18 school year.  Throughout her employment, she taught at Summertown High School.

[2] According to BOE, during the 2016-2017 school year, Teacher was aware that other RTI Coordinators were evaluated using the School Services Personnel evaluation rubric.

[3] In this state, non-tenured teachers are employed by successive one-year contracts that are subject to renewal at the end of the school year.  *See Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 808-09 (Tenn. 2003).  A non-tenured teacher "shall continue in such service until [she has] received written notice from the [] board of education or director of schools."  Tenn. Code Ann. § 49-5-409(a).

documents reflecting alleged observations of Teacher.

Teacher later received emails providing the results of two purported observations of her. According to Teacher, Principal Franks claimed to have conducted an in-classroom observation of her on May 31, 2018, at 7:15 p.m. Ms. Franks completed the form nine minutes later at 7:24 p.m. Teacher observes that the school year had already ended by that date and no one was present in the school at that time of night. Teacher therefore claims that Ms. Franks never conducted any in-classroom observation of her.

A second form was prepared by former Principal Long. It related that Mr. Long conducted the observation on December 13, 2017, but did not create the form until June 4, 2018, six months after the date of the alleged observation and two weeks after Teacher's contract was not renewed. Teacher asserts that administrators directed Mr. Long to "go back and complete" an evaluation form for an observation that did not take place.

Teacher initially filed a grievance asserting the inaccuracy of the data (based on her allegation of falsified observation results) and the failure to follow the evaluation process (by failing to observe her); however, it was not processed because she was no longer an employee. Teacher then filed a complaint on April 26, 2019, seeking, on its face, declaratory relief for breach of contract on the basis that BOE dismissed her "without a valid notice of nonrenewal under the Continuing Contract Law ["CCL"]." She alleged: "Because McAllister was not properly evaluated, Director McDaniel's purported nonrenewal of McAllister did not comply with the requirements of … § 49-1-302(d)(2)(A), … and therefore was invalid under the Continuing Contract Law … § 49-5-409." Teacher argued that BOE "failed to adhere to Tennessee law and to state and local board policies" when she was denied the right to pursue a grievance and when her evaluations did not inform the decision to terminate her. Teacher specifically claims that she was asserting an implied right of action based on Tennessee Code Annotated section 49-1-302(d)(2)(A), a part of the "First to the Top Act" ("FTTTA"). It provides: "[annual] evaluations shall be a factor in employment decisions, including . . . promotion, retention, termination, compensation and the attainment of tenure status." The FTTTA also mandated a local level evaluation grievance procedure for public school teachers to provide a means for a teacher to challenge "the accuracy of the data used in the evaluation and the adherence to the evaluation policies adopted." Teacher argues that the legislature declared that evaluations "shall be a factor" in employment decisions, including dismissals.

BOE responded to Teacher's complaint by denying that it had failed to conduct observations of Teacher or that the evaluations were falsified or improper. BOE filed a summary judgment motion asserting the following arguments: (1) section 49-5-409[4] does

---

[4] Tennessee Code Annotated section 49-5-409, the "Continuing Contract Law," denotes that a non-tenured teacher's contract for employment will be automatically renewed for the ensuing school year unless she receives the required written notice of dismissal within five business days following the last

not provide a private right of action for a non-tenured teacher subject to a nonrenewal decision; and (2) Teacher had no right to judicial review regarding her nonrenewal because she was a probationary employee.

The trial court held as follows:

1. This court acknowledges that Tennessee Supreme Court Rule 4 generally provides that unpublished opinions are persuasive authority, and the court specifically finds *Mosby v. Fayette Cnty. Bd. of Educ.*, No. W2019-01851-COA-R3-CV, 2020 WL 4354905 (Tenn. Ct. App. July 29, 2020) to be persuasive and controlling authority for this case.

2. Plaintiff has no private right of action under any of the theories alleged in her complaint, and therefore, Defendants' Motion for Summary Judgment is GRANTED based on the arguments presented in its memorandum of Law . . . .

3. While Plaintiff disputed [certain] facts . . . in Defendants' Statement of Undisputed Material Facts, the dispute identified by Plaintiff does not create a factual dispute such that Defendants' Motion should be denied.

Teacher filed a timely notice of appeal.

## II. ISSUES

The issues raised in this appeal are as follows:

1.  Did the trial court correctly rule that Tennessee Code Annotated section 49-5-409 does not provide a private right of action for a non-tenured teacher relying on *Mosby v. Fayette Cnty. BOE*?

2.  Did the legislature intend for Tennessee Code Annotated section 49-1-302 to apply to a non-tenured teacher's contract such as to provide a private right of action to challenge a non-renewal decision?

## III. STANDARD OF REVIEW

This case was decided upon Defendants' motion for summary judgment, which is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

instructional day of the current school year."

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues exist and that it is entitled to judgment as a matter of law. *Byrd v. Hall*, 842 S.W.2d 208, 211 (Tenn. 1993). In cases where the moving party does not bear the burden of proof at trial, the movant may obtain summary judgment if it: (1) affirmatively negates an essential element of the nonmoving party's claim; or (2) demonstrates that the nonmoving party's evidence at the summary judgment stage is insufficient to establish an essential element of the nonmoving party's claim. *Rye v. Women's Care Ctr. Of Memphis, MPLLC*, 477 S.W.3d 238, 264 (Tenn. 2015). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 265 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the non-moving party. *Rye*, 477 S.W.3d at 265. Review in this court is de novo, without a presumption of correctness. *Id.* at 250.

To the extent that this case requires that we construe statutes, our review is also de novo. *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911-12 (Tenn. 2000) ("Issues of statutory construction are questions of law and shall be reviewed de novo without a presumption of correctness."). In construing statutes, we keep the following guidance in mind:

> Our resolution of this issue is guided by the familiar rules of statutory construction. Our role is to determine legislative intent and to effectuate legislative purpose. The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute and the entire statutory scheme. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions."

*Dallas v. Shelby Cnty. BOE*, 603 S.W.3d 32, 37 (Tenn. Ct. App. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted)).

# IV. DISCUSSION

## A.

A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement. *Hardy v. Tournament Players Club of Southwind, Inc.*, 513 S.W.3d 427, 433 (Tenn. 2017). The right of action need not be explicit in the statute and may be implied. To determine whether a right of action is implied, the courts consider (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation. *Id.* at 435-36; *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010).

In *Mosby,* which also involved a non-tenured teacher who sued to challenge her dismissal at the end of the school year, we noted: "Section 49-5-409 does not offer a prolonged list of protections for non-tenured teachers who wish to challenge a decision to non-renew their employment. Instead '[the timing requirement] is the central and nearly the *sole* protection offered to non-tenured teachers.'" *Mosby*, 2020 WL 4354905, at \*5 (quoting *Dallas,* 603 S.W.3d at 51) (emphasis in original)). Ms. Mosby asserted a claim pursuant to Tennessee Code Annotated section 49-5-409 after the director of schools acknowledged that he did not consider her evaluations when he decided to dismiss her. This court concluded that the statute "does not provide a private right of action."

Teacher argues that *Mosby* has no application to this claim and that Ms. Mosby's assertion of a direct action under the CCL was different than the legal claim here. She contends that Ms. Mosby <u>did</u> <u>not</u> rely on the requirements of the FTTTA as a basis for a breach of contract claim. Ms. Mosby specifically stated that she was not asserting "an implied right of action based on Tenn. Code Ann. § 49-1-302(d)(2)(A)." Thus, this court expressly pretermitted the question of whether Ms. Mosby could assert a cause of action for a violation of the requirements in Tennessee Code Annotated section 49-1-302(d)(2)(A).

In contrast to Ms. Mosby, Teacher relies on the FTTTA, arguing that the statutory provisions require the implementation of guidelines and criteria for the evaluation of all public-school teachers: "The evaluations shall be a factor in employment decisions, including, but not necessarily limited to, promotion, retention, termination, compensation and the attainment of tenure status." She claims that the evaluation requirements of Tennessee Code Annotated section 49-1-302(d)(2)(A) formed a part of her contractual employment relationship with BOE and that a breach of those requirements is actionable in contract. According to Teacher, BOE was required by law to use her evaluations as a factor in the decision to dismiss her. She further argues that the FTTTA mandates local

level evaluation grievance procedures to provide a means for an employee to challenge "the accuracy of the data used in the evaluation and the adherence to the evaluation policies."[5] In this case, Teacher asserts that no legitimate evaluations were generated for her for the 2017-18 school year. The scores created for her were falsified. She argues that the director of schools for the county failed to follow the law when he simply relied on the recommendation of the principal and did not review the evaluations. She contends that she is entitled to declaratory judgment regarding Defendants' failures to follow the law and abide by her contract of employment.

Teacher posits that even if *Mosby* correctly concluded that the CCL itself did not provide a private right of action to challenge a dismissal for failure to consider her evaluation, we have not addressed the other claims she asserts. According to Teacher, following *Mosby* would turn the evaluation mandate and grievance procedure requirements of the FTTTA into completely unenforceable dead letters and render teacher evaluations— the centerpiece of the FTTTA that was intended to drive educational improvement—into nothing more than cudgels to be used against teachers, whether justified or not, with no avenue for a victimized employee to challenge her mistreatment. She contends such an expansive reading of *Mosby* is inconsistent with the established principles of law under which a teacher's employment is contractual in nature and under which the requirements of state law are treated as part of that contract. *See McMinn Cnty. BOE v. Anderson*, 292 S.W.2d 198, 200 (Tenn. 1956) (concluding that "the law as written in the various statutes must be read into the contracts as entered into by the teachers with the county.").

BOE argues that the trial court correctly ruled that *Mosby* is persuasive and controlling authority and that the CCL does not provide a private right of action for a non-tenured teacher who has been subject to a timely non-renewal decision. BOE notes that at no point in her complaint did Teacher assert that Tennessee Code Annotated section 49-1-302(d)(2)A) implies a right of action for a non-tenured teacher to challenge a non-renewal decision. Instead, she alleged that her non-renewal was invalid pursuant to the CCL because of BOE's failure to follow the FTTTA. BOE claims that it was only after Defendants based the summary judgment motion on *Mosby* that Teacher asserted the claim of an implied right of action pursuant to Tennessee Code Annotated section 49-1-302(d)(2)(A).

In *Mosby*, the plaintiff filed suit arguing that the defendants improperly failed to consider the required evaluations under the FTTTA in deciding to non-renew her employment and improperly delegated the responsibility to make the non-renewal decision. *Mosby*, 2020 WL 4354905, at *2. The court directly addressed the issue of whether a non-renewal decision could be challenged based on a failure to comply with the evaluations. A panel of this court expressly found as follows:

---

[5] Teacher notes that Ms. Mosby did not attempt to pursue an evaluation grievance; therefore, she made no claim based on the refusal to consider a grievance.

[N]o language in section 49-5-409 … directs a court to include section 49-1-302(d)(2)(A) in a claim under the Continuing Contract Law. *See* Tenn. Code Ann. § 49-5-409. Allowing such a claim would fly in the face of the directive that courts shall not "create a [private] right under the guise of liberal interpretation of [a] statute." *See Brown*, 328 S.W.3d at 855 (quoting *Premium Fin. Corp.*, 978 S.W.2d at 93). Instead of wielding the broad-sweeping effect that Plaintiff asserts, the Continuing Contract Law centers on the timeliness of notice given to a teacher. *See Dallas [v. Shelby Cnty. BOE,* 603 S.W.3d 32, 35 (Tenn. Ct. App. 2019)]….

*Id.* at *5.

Defendants contend that the instant case is analogous to *Mosby*. Teacher asserted a cause of action under the CCL that her non-renewal was unlawful for failure to comply with the observation and grievance procedure requirements set forth in the FTTTA. Both cases contained alleged falsified reports about evaluations that purportedly never occurred. Both cases involved non-tenured teachers subject to the CCL. Caselaw provides that the only requirement for a non-tenured teacher to be dismissed without cause is for the teacher to receive proper written notice of the dismissal. *See Snell v. Brothers,* 527 S.W.2d 114, 116 (Tenn. 1975) (stating that "[a]n untenured teacher . . . can be discharged without cause simply by written notice of dismissal" if the notice is received by the required date); *Washington Cnty. Educ. Ass'n v. Washington Cnty. BOE*, No. E2018-01037-COA-R3-CV, 2019 WL 2537864, at *1 (Tenn. Ct. App. June 20, 2019) (holding that non-tenured teachers do not have standing to file claims related to the procedure and review of a director's non-renewal decision); *Parker v. Lowery*, No. E2012-00547-COA-R3-CV, 2013 WL 1798958, at *5 (Tenn. Ct. App. Apr. 26, 2013) ("Despite specific provisions providing a procedure in which to recommend and elect teachers for tenure, Teacher had no right of judicial review regarding the non-renewal of her contract and her corresponding failure to receive tenure because she was a probationary employee."); *Cannon Cnty. BOE v. Wade*, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *10 (Tenn. Ct. App. July 31, 2008) (noting the only requirement for a non-tenured teacher to be dismissed without cause is for the teacher to receive proper written notice of the dismissal). Even if the evaluations of Teacher did not factor into the decision not to renew her contract, she has no right of judicial review of the non-renewal decision because she was a probationary employee who received timely notice of non-renewal. "A non-tenured teacher whose employment is not renewed … has no right to judicial review of the local school administrators' decision not to renew employment." *Malone v. Shelby Cnty. BOE*, 773 S.W.2d 256, 259 (Tenn. Ct. App. 1989). "Where a teacher has not acquired tenure status his right to a judicial review of any action of the Board in not reemploying him is not authorized by law. He is not entitled to reelection as a matter of right beyond a contract period." *Shannon v. BOE*, 286 S.W.2d 571 (Tenn. 1956). A long line of precedent establishes that the CCL's sole protection for non-tenured teachers in a challenge to a non-renewal decision is the

timeliness of the notice of non-renewal.  As noted by Defendants, the legislature has not provided the relief sought by Teacher.

Teacher also claims that her non-renewal was unlawful for failure to comply with the observation and grievance procedure requirements in the FTTTA.  She argues that the evaluation grievance procedure operates as an additional basis for a non-tenured teacher to challenge an employment action.  However, the FTTTA provides:  "This grievance procedure must provide a means . . . to challenge only the accuracy of the data used in the evaluation and the adherence to the evaluation policies adopted pursuant to this subdivision (d)(2)." *See Trout v. Knox Cnty. BOE*, 163 F. Supp. 3d 492, 496-97 (E.D. Tenn. 2016).  In *Trout*, the court held that the purpose of a grievance procedure is to "efficiently and fairly resolve grievances regarding procedural errors in the evaluation process, not to address disputes regarding employment actions taken based on the results of an evaluation."  As noted by BOE, the limited relief afforded by the grievance procedure to review procedural errors does not amount to a "claim" Teacher can assert distinct from the holding in *Mosby.* The trial court properly found *Mosby* to be controlling.

**B.**

Teacher further argues that the state's teachers are the intended beneficiaries of the FTTTA mandates, which ensure that merit is considered in employment decisions.  She claims that there is no indication of a legislative intent to deny a teacher a private right of action when she is dismissed without consideration of her evaluations and denied the right to pursue her grievance.  Teacher contends that the evaluation and grievance mandates of the FTTTA became a part of her contract of employment.  She asserts that the FTTTA effectively modified all laws addressing personnel decisions affecting teachers and imposed a contractual obligation that evaluations be conducted, that those evaluations be a factor in employment decisions, and that teachers have the right to file a grievance to ensure the accuracy of the data and adherence to the evaluation of policies.

BOE contends that teachers were not the intended beneficiaries of a statute designed to compete for federal funding.  Defendants note that the express and implied legislative history regarding the statute does not evidence any intent to focus on individual employment decisions involving non-tenured teachers or to create an implied right of action for breach of a non-tenured teacher's contract.  The stated goals of the FTTTA were focused on sweeping policy changes to improve education with students as the intended beneficiaries.  Ensuring merit in non-tenured teacher employment decisions was not present or implied in the bill summary or text of the statute.  Thus, Teacher has failed to meet her burden to prove she is an intended beneficiary of the FTTTA and that the legislature intended for the statute to serve as a private right of action for non-tenured teachers suffering a non-renewal decision.

As observed by BOE, even if Teacher is an intended beneficiary of the FTTTA, this fact alone does not imply a private right of action. Teacher's contention that she can assert a breach of contract claim for failure to follow evaluation and grievance procedures is inconsistent with the FTTTA as well as the CCL. Tennessee courts have consistently interpreted the CCL to mean that "a non-tenured teacher may be dismissed without cause by written notice that the teacher has not been re-elected to teach the next school year," as long as the notice complies with the time limits set in Tennessee Code Annotated section 49-5-409. As argued by Defendants, implying a private right of action for breach of contract based on the purported failure to consider evaluations or grievances would be inconsistent and would render the CCL superfluous.[6] Additionally, such an interpretation would conflict with the discretion granted to the director of schools in making employment decisions. Tenn. Code Ann. § 49-2-301(b)(1)(J). No proof of legislative intent to imply a private right of action in the FTTTA for non-tenured teachers who have been non-renewed has been demonstrated. The trial court properly ruled that Teacher had no private right of action under the theories she raised in her complaint.

## V. CONCLUSION

For the reasons stated herein, we affirm the trial court's decision. This matter is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Lacy McAllister, for which execution may issue if necessary.

_____
JOHN W. MCCLARTY, JUDGE

---

[6] The mandatory requirement in section 49-1-302 that evaluations "shall be a factor in employment decisions" directly conflicts with the language of section 49-5-409 that provides evaluations "may be a factor" in the decision to retain a non-tenured teacher.

- 10 -