Dr. Clarence G. JOHNSON, Petitioner-Plaintiff,

v.

CHRISTIAN BROTHERS COLLEGE, Respondent-Defendant.

Supreme Court of Tennessee.

May 15, 1978.

G. Philip Arnold, Memphis, for petitioner-plaintiff.

William M. Walsh, Memphis, for respondent-defendant.

## OPINION

HARBISON, Justice.

Petitioner, an associate professor of chemistry, instituted this action against Christian Brothers College for alleged breach of contract of employment. He also claimed damages for defamation against certain individual members of the faculty. All of his claims were dismissed following a non-jury trial in the circuit court. Petitioner appealed only as to the contract claim against respondent. The Court of Appeals affirmed the dismissal of the suit. After giving further consideration to the issues, we concur in that decision.

Respondent is a small, religiously-affiliated, private college in Memphis. It has a formal tenure program, details of which are contained in a faculty handbook exhibited in the record. Basically this provides for a probationary period of seven years, after which a full-time faculty member may be granted tenure by the President of the college upon recommendation of the Rank and Tenure Committee. Such tenure is automatically conferred with award of the eighth annual employment contract.

Petitioner was employed as an instructor in chemistry in 1968 for one year. Annually thereafter he entered into additional one-year contracts, the last of these being for the 1974–75 academic year. This was his seventh year, and petitioner concedes that during that academic year he had not yet achieved tenure. He further concedes that at no time was tenure ever conferred upon him by the president. Petitioner was not discharged prior to expiration of his seventh annual contract but taught the full academic year, ending in May 1975, and was paid therefor. He was not reemployed for the 1975–76 academic year but was notified in December, 1974 that he would not be offered an eighth-year contract with tenure.

Nevertheless, petitioner contends that he had a reasonable expectancy of reemployment, and that during the seventh academic year he had achieved a tentative or "de

facto" tenure, entitling him to formal notice and a hearing and a showing of cause for the non-renewal of his employment.

Essentially, petitioner contends that the effective probationary period at respondent college is only six years, rather than seven. He asserts that the recipient of a "letter of intent" accompanying his seventh-year contract is no longer on probationary status during the seventh year but has the same contractual right either to continued employment thereafter or to a formal hearing and showing of cause for termination as do professors with full tenure.

Neither of the courts below found these contentions to be sustained by the evidence, nor do we.

In the faculty handbook there are certain provisions dealing with notice of termination of employment. However, asterisks and a footnote preceding one of these provisions, which might otherwise apply to the present case, make it clear that that provision is subject to the final approval of the Executive Committee of the Board of Trustees. The President of the college testified that the Executive Committee had never approved this particular provision, and that all members of the faculty had been so advised. The provision requires written notice when a full-time faculty member is not to be reappointed,

> "At least twelve months before the expiration of an appointment after two or more years in the institution."

The Court of Appeals indicated that if petitioner had any meritorious claim it would involve this clause, but petitioner expressly disavows in this Court any right to recover thereon and insists that the provision is not pertinent to his claim for breach of contract. For this reason, we deem it unnecessary to give detailed consideration to this termination clause although, had it been in force and effect, its terms may not have been literally observed by the college administration.

When petitioner was reemployed for his seventh academic year, 1974–75, he received a letter from the President dated March 1, 1974, enclosing his new contract and stating that petitioner had been recommended for a grant of tenure "with your eighth contract next year."

During the fall of 1974, however, petitioner's status was reconsidered, and he was orally notified by the Academic Dean in November that he would not be reemployed for the eighth year. He did not at that time, or at any time before filing suit, demand formal notice or a hearing. He did have a number of conferences with his faculty colleagues and with the President of the college, and was advised of the reasons for his non-employment.[1] None of these involved the exercise of any First Amendment or other constitutional rights, nor, as previously stated, was petitioner discharged prior to expiration of his current employment contract, for cause or otherwise. He simply was not reappointed, and his only contention here is that during his final probationary year, he was entitled to receive notice and a hearing before being denied reemployment.

The operative contract documents do not so provide, nor does the proof show any custom or practice establishing such procedures. At all times pertinent to this case petitioner was a non-tenured, probationary faculty member, whose contract the college was under no legal obligation to renew.

Petitioner predicates his entire claim upon part of a general policy statement or commentary on Tenure and Academic Freedom of the American Association of University Professors, contained as an appendix to the faculty handbook. This document contains a statement of procedures to be followed in disputed cases when a teacher is terminated for cause. It also contains interpretive comments on the tenure pro-

---

1. The Academic Dean, by letters dated Dec. 3, 1974, notified petitioner and the President that he was recommending non-renewal of petitioner's employment for the next school year. He did offer a temporary assignment through December, 1975, but petitioner declined this offer. The President formally notified petitioner of non-renewal by letters dated December 4, 1974 and March 14, 1975.

gram. The comment relied upon by petitioner is a footnote to a general statement which calls for notice of at least one year prior to expiration of the probationary period if a teacher is not to be continued in service thereafter:

"The effect of this subparagraph is that a decision on tenure, favorable or unfavorable, must be made at least twelve months prior to the completion of the probationary period. If the decision is negative, the appointment for the following year becomes a terminal one. If the decision is affirmative, the provisions in the 1940 Statement with respect to the termination of services of teachers or investigators after the expiration of the probationary period should apply from the date when the favorable decision is made."

The comment continues with a statement that the "general principle of notice" is developed "with greater specificity" in Standards for Notice of Nonreappointment adopted by the AAUP in 1964. The latter standards, which appear in the commentary, are also part of the principal text of the handbook, appearing as chapter 3, article V, under the heading "Termination of Employment." These standards contain the twelve-month rule quoted earlier, which respondent had never adopted.

Had the respondent adopted the twelve-month rule, either by express approval thereof in the handbook or by usage and custom, the contentions of petitioner might have merit. He insists that the comment quoted above means that after he had received his seventh-year contract and "letter of intent", he was thereafter entitled to the formal notice and hearing procedures incident to termination of tenured faculty members. Since the provision calling for twelve-months' notice was not in force at respondent, however, petitioner's contention must fail.

There is no showing that the quoted commentary had been adopted or approved by the college as part of its tenure practices and procedures independently of the notice and termination clause upon which it is an interpretive comment. Absent such evidence, we do not believe that the comment can be divorced from the notice provisions as petitioner contends. He has not established by evidence any usage or practice at respondent to treat persons in their final probationary year as equivalent to tenured faculty members. The evidence is to the contrary. The handbook section defining the duties of the Committee on Rank and Tenure requires that committee to discuss each faculty member at least once each year, "prior to December 15th and/or prior to contract time." The handbook states that the purpose of the meeting prior to December 15th "is to review those faculty members whose contracts may not be renewed the following year," and there then follows a reference to the handbook section dealing with termination of employment, chapter 3, article V.[2]

█ It thus appears that there was no established practice at respondent to make the decision on tenure other than during the final year of probation, and the handbook provisions on termination carry their own warning that the twelve-month notice provisions recommended by the AAUP had not been adopted or placed into effect.

Further, we are impressed that petitioner at no time demanded formal notice or a hearing and that he was accorded numerous conferences and informal meetings which may well have served as a practical equivalent of the more formal procedures for which he now contends. It is unnecessary to decide the question of waiver, however, since we find no express or implied contractual right of a probationary faculty member to those procedures.

█ We have examined the authorities cited and relied upon by petitioner. Some of these hold that non-tenured faculty members in public institutions may not be terminated contrary to applicable state or

2. A member of the Committee testified that the Committee met, usually in February, "to review the recommendations for promotion and

for tenure *for the subsequent year.*" (Emphasis supplied). Contracts were awarded in March of each school year.

local statutory and administrative provisions. Other cases hold that faculty members may not be denied reemployment simply because of their lawful exercise of First Amendment or other constitutional rights. Further, in private colleges, custom, usage, estoppel or the wording of institutional policies may require written notice or other formal procedures in connection with the nonrenewal of employment contracts. *See generally Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347 (6th Cir. 1975), *cert. den.* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976); *Toney v. Reagan*, 467 F.2d 953 (9th Cir. 1972), *cert. den.* 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973), *affirming* 326 F.Supp. 1093 (N.D.Cal.1971); *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970); *Greene v. Howard University*, 134 U.S.App. D.C. 81, 412 F.2d 1128 (1969); *Francis v. Ota*, 356 F.Supp. 1029 (D.Haw.1973). *See also State ex rel. Chapdelaine v. Torrence*, 532 S.W.2d 542 (Tenn.1975). In our opinion none of the foregoing authorities has application to the facts of the present case. There is no evidence of any departure from this private institution's written policies and its hiring practices, nor any basis for application of rules of estoppel. During his last probationary year, petitioner's performance was subject to reevaluation and the respondent was free to reach its conclusion not to extend an eighth-year contract and concomitant tenure, without formal prior notice and hearing.

Finding no infringement of petitioner's contractual rights by respondent, we affirm the judgment of the Court of Appeals at the cost of petitioner.

HENRY, C. J., COOPER and FONES, JJ., and QUICK, Special Justice, concur.