**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0207n.06

No. 13-5188

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Mar 17, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PRESTON BARBEE, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| UNION CITY BOARD OF EDUCATION; | ) | |
| GARY HOUSTON, Director of Union City | ) | O P I N I O N |
| Schools, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:  MOORE and McKEAGUE, Circuit Judges; HELMICK, District Judge.[*]

**McKeague, Circuit Judge.**  Appellant Preston Barbee appeals the district court's grant of summary judgment to Appellees Union City Board of Education and Gary Houston, the Director of Schools.  Barbee alleges that he was wrongfully terminated under the Tennessee Teacher Tenure Act and denied his right to due process under 42 U.S.C. § 1983.  We affirm.

**I.**

This case centers on the employment relationship between Preston Barbee and the Union City Board of Education.  In the summer of 2008, the Board of Education hired Barbee as a teacher and assistant basketball coach at Union City High School.  At the end of the basketball season, Director

---

[*]The Honorable Jeffrey J. Helmick from the U.S. District Court for the Northern District of Ohio, sitting by designation.

Gary Houston offered Barbee another contract, this time as a teacher for the 2009-10 school year. At the end of that school year, Director Houston offered Barbee another teaching contract, this time for the 2010-11 school year.

During the 2010-11 school year, several incidents marred Barbee's employment record. Principal Wesley Kennedy verbally scolded Barbee for chewing tobacco on school grounds and for leaving his students unattended. Barbee also received two written reprimands. First, on March 15, 2011, Barbee received a memorandum from Vice Principal Jacob Cross concerning his habit of leaving students unattended, which on one occasion resulted in one student pursuing another student with a can of mace. Second, on March 29, 2011, Barbee received another reprimand concerning his habit of leaving students unattended, this time, the document warned Barbee that continued transgressions could result in Barbee's not being recommended for tenure. Despite these issues, Director Houston recommended Barbee to the Board of Education for tenure.

On April 11, 2011, the Board of Education held its regular April board meeting. The minutes from this meeting indicate that the "following eligible teachers were presented for tenure after supporting documentation had been submitted to the board at the March board meeting: Preston Barbee . . . A motion . . . to approve the eligible teachers received a second . . . The motion carried by all in attendance." R. 38-1, Board Meeting Minutes at 54–55, PageID # 424–25. The rest of the meeting involved discussions about the school calendar, a personnel report concerning resignations and unrelated new hires, and Director Houston's report concerning sports, teacher appreciation day, and an upcoming banquet.

After the Board of Education's meeting, multiple student allegations concerning Barbee surfaced, and these allegations eventually led to his termination. On April 21, 2011, Principal Kennedy sent Barbee an email concerning student allegations that Barbee had used tobacco in class and made inappropriate comments to female students, which Barbee denied. On April 27, 2011, Barbee met with Principal Kennedy and was told that female students felt uncomfortable around Barbee because they felt that Barbee was "watching their butt[s,]" that his "looks and comments [had] gotten worse since spring break[,]" that he had "touched [their] leg or back area of body[,]" and that they felt "retaliation" from him. R. 37-4, April 27th Meeting Minutes at 5, PageID # 303. Barbee was also told of drug-related allegations that he "dips in class" and "smoked dope with a basketball player[.]" *Id.* Despite denying these allegations, Barbee was suspended without pay. On May 2, 2011, Barbee met with Director Houston and Principal Kennedy. At this meeting, Barbee was "placed on leave for the rest of the school year, with pay." R. 38-1, Meeting with Barbee at 62, PageID # 432. Barbee was also informed via letter that as "a non-tenured teacher" he would "not be rehired to teach in the Union City School System for the 2011-12 school year."[1] *Id.* at 65, PageID # 435.

After Barbee's contract was non-renewed, several letters were exchanged between the parties' attorneys. On June 7, 2011, an attorney from the Tennessee Education Association sent Director Houston a letter concerning Barbee's tenure status, stating that the minutes from the April 11, 2011 board meeting indicated that Barbee was reemployed, and that Barbee was tenured. On

---

[1]Director Houston later admitted that the Board of Education played no role in his decision to non-renew Barbee.

June 22, 2011, the School Board's counsel Charles Cagle sent a letter to the Tennessee Education Association concerning Barbee, stating that "conferral of tenure status does not become immediately effective" until after the teacher is reemployed for the following school year. *Id.* at 60, PageID # 430. According to Cagle, because Barbee was not reemployed, he was not tenured.

On September 6, 2011, Barbee filed suit in the Chancery Court of Obion County, Tennessee against the Board of Education and Director Houston. The Board of Education and Director Houston removed the case to the U.S. District Court for the Western District of Tennessee. Both parties moved for summary judgment, and the district court granted summary judgment for the defendants. The district court reasoned that Barbee's tenure would not have gone into effect until after the Board of Education or Director Houston reemployed Barbee for the 2011-12 school year. The district court found that neither the minutes from the Board of Education's April 11, 2011 meeting nor the letter from Attorney Cagle indicated that Barbee met the reemployment requirement under Tennessee law. The district court held that Barbee was not tenured and therefore not entitled to the procedural safeguards in the Tennessee Tenure Act or recovery under 42 U.S.C. § 1983. This appeal followed.

**II.**

This Court reviews a district court's grant of summary judgment *de novo*. *Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 155–56 (quoting Fed. R. Civ. P. 56(a)). In our review, we "must view all evidence in the light most

favorable to the non-moving party." *Id.* at 156 (internal quotation marks omitted) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir.2009)).

The Teacher Tenure Act is the state statute that outlines the teacher-tenure process in Tennessee. We interpret the Act consistent with the practice adopted by Tennessee's state courts. When interpreting statutes, Tennessee courts "presume that every word in a statute has meaning and purpose; each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007) (citing *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005)). "When the statutory language is clear and unambiguous, [courts] must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Id.* (internal quotation marks omitted) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). Courts enforce "the written language without reference to the broader statutory intent, the history of the legislation, or other sources." *Id.* (citing *Abels v. Genie Indus. Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006)).

At the outset, the basic structure of the Tennessee school system is helpful in understanding the tenure process prescribed by the Act. "Each local board of education is authorized to employ a director of schools[.]" Tenn. Code Ann. § 49-2-301(a) (2010).[2] The Director of Schools is "appointed by and answerable to the board." *Lawrence Cnty.*, 244 S.W.3d at 310 (internal citations omitted). Although the Board of Education is the school system's "supreme power[,]" both the Board of Education and the Director of Schools have specific roles to play in the tenure process

---

[2]The 2010 version of the Act is the one that was in effect as of April 2011.

because each is tasked with distinct duties. *Id.* at 318 (discussing how the Board of Education and Director of Schools work in tandem). In some cases, the Act assigns a duty exclusively to the Board of Education. *See, e.g.*, Tenn. Ann. Code § 49-2-203(a)(1) (2010) (election). In other cases, the Act directs the Board of Education to delegate a duty to the Director of Schools. *See, e.g.*, *id.* § 49-2-301(b)(1)(EE) (employment).

Under the Act, a teacher is either tenured or not tenured. A tenured teacher may be dismissed, suspended, or have his contract non-renewed only with cause and after having been given notice, a hearing, and an opportunity for judicial review. *See Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). By contrast, a non-tenured teacher can be dismissed, suspended, or have his contract non-renewed without cause and without the requirement of notice, a hearing, or an opportunity for judicial review. *See id.* Ultimately, the "board of education or director of schools" must provide "written notice" to teachers of their "dismissal or failure of election" by "May 15 to be applicable to the next succeeding school year[.]" Tenn. Code Ann.§ 49-5-409(a) & (b)(2) (2010).

The Act lists three prerequisites to obtaining tenure. First, the Director of Schools must "[r]ecommend to the board teachers who are eligible for tenure[.]" *Id.* § 49-2-301(b)(1)(J). "It is the duty of the board of education to assign [this recommendation duty] to its director of schools[.]" *Id.* § 49-2-301(b)(1). With respect to the recommendation duty, the Director of Schools is tasked with making "such recommendations to the board as the director deems for the best interest of the public schools, but in no case shall the director have a vote on any question coming before the board[.]" *Id.* § 49-2-301(b)(1)(F).

Second, the Board of Education must "[e]lect, upon the recommendation of the director of schools, teachers who have attained or are eligible for tenure and fix the salaries of and make written contracts with the teachers[.]" *Id.* § 49-2-203(a)(1). This election prerequisite is exclusively "the duty of the local board of education[.]" *Id.* § 49-2-203(a). For situations in which a teacher is not elected by the Board of Education, it is the Director of Schools' responsibility to then "notify such teachers of their failure of reelection[.]" *Id.* § 49-2-301(b)(1)(J).

Third, a teacher must satisfy the four tenure-eligibility requirements listed in § 49-5-503:

> (1) Has a degree from an approved four-year college or to any vocational teacher who has the equivalent amount of training established and licensed by the state board of education;
>
> (2) Holds a valid professional license based on training covering the subjects or grades taught;
>
> (3) Has completed a probationary period of three (3) school years or not less than twenty-seven (27) months within the last five-year period, the last year to be employed as a regular teacher; and
>
> (4) *Is reemployed by the board for service after the probationary period.*

*Id.* § 49-5-503 (emphasis added). While § 49-5-503(4) indicates that reemployment is done by the Board of Education, § 49-2-301(b)(1)(EE) indicates that the Board of Education assigns to the Director of Schools the duty to "*employ*, transfer, suspend, *nonrenew,* and dismiss all personnel[.]" *Id.* § 49-2-301(b)(1)(EE) (emphasis added). "It is [therefore] the duty of the board of education to assign [employment and nonrenewal duties] to its director of schools[.]" *Id.* § 49-2-301(b)(1).

## III.

Determining whether Barbee was a tenured teacher at the time his contract was non-renewed requires analyzing whether the Act's three prerequisites were met. The parties agree that the first

-7-

prerequisite, Director Houston's recommendation, was met. They disagree whether the second prerequisite, the Board of Education's election, was met: Barbee argues that election occurred, whereas the Board of Education argues that only provisional election occurred. And they further disagree whether the third prerequisite, satisfaction of the four tenure-eligibility requirements, was met. Namely, they dispute whether Barbee satisfied the fourth tenure-eligibility requirement of having been "reemployed by the board for service after the probationary period." Tenn. Code Ann. § 49-5-503(4) (2010). We address each prerequisite in turn.

**A.**

Satisfaction of the second prerequisite depends on whether the Board of Education's action at its April 11, 2011 meeting constituted election within the meaning of the Act. *See id.* § 49-2-203(a)(1) ("It is the duty of the local board of education to: Elect . . . teachers who have attained or are eligible for tenure and fix the salaries and make written contracts with the teachers[.]"). Barbee argues that the Board of Education elected him for tenure, and that he satisfies the reemployment requirement under Tennessee law because the terms election and reemployment "are synonymous." Pet. Br. at 20 n.12. The Board of Education argues that its action provided Barbee only with provisional tenure status that would not go into effect until Barbee was reemployed, namely, when Barbee was extended employment for the 2011-12 school year. For purposes of whether Barbee satisfied the second prerequisite, it is enough for us to determine that the Board of Education's action could only be understood as a grant of provisional tenure conditioned on Barbee's later fulfillment of the tenure-eligibility requirement of reemployment.

This is so for two reasons. First, Barbee's attempt to merge two prerequisites by claiming that they are synonymous fails based on the Act's language and structure. The Act clearly describes a Board of Education's act of *election* as one distinct from *reemployment*. *Reemployment* is best understood as the renewal of a teacher's contract pursuant to § 49-2-301(b)(1)(EE), which states that the Board will assign to the Director the duty to "employ" teachers. *See* Tenn. Code Ann. § 49-2-301(b)(1)(EE) (2010). *Election*, by contrast, is exclusively the "duty" of the Board of Education.[3] *See id.* § 49-2-203(a). While the Board of Education did act to provisionally *elect* Barbee, it had not yet acted (through Director Houston) to *reemploy* Barbee. *See id.* § 49-2-301(b)(1)(J) (communicating reelection); *see also id.* § 49-2-301(b)(1)(EE) (communicating nonrenewal). Conflating reemployment with election does violence to the statutory scheme.[4] Indeed, despite the fact that both are discretionary acts, reemployment (like completion of the three-year probationary period) is a separate tenure-eligibility requirement.[5] *See id.* § 49-2-203(a); *id.* § 49-5-503(4); *see*

---

[3]Barbee argues at length that the Board of Education is the supreme governing body of the school system. This is true but not helpful, as this argument neglects the fact that the Act specifically directs the Board of Education to delegate the task of reemployment to Director Houston. *See id.* § 49-2-301(b)(1)(EE).

[4]"If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred." Antonin Scalia & Bryan A. Gardner, Reading Law: The Interpretation of Legal Texts 176 (2012).

[5]The minutes state that Barbee was one of the "eligible teachers [who] were presented for tenure[.]" R. 38-1, Minutes at 54, PageID # 424. Despite this language, however, tenure eligibility is determined according to the tenure-eligibility requirements listed in the statute. *See* Tenn. Code Ann. § 49-5-503 (2010). Neither the Board of Education nor Director Houston had the power to waive those statutory conditions. *See id.* (noting the reemployment requirement).

*also Bowden v. Memphis Bd. of Educ.*, 29 S.W.2d 462, 465 (Tenn. 2000) ("We concluded that the completion of the probationary period by itself does not automatically confer tenure, but rather, is merely a condition precedent to *eligibility* for tenure.") (internal quotation marks omitted). Therefore, the statutory structure instructs that the Board's act of election for provisional tenure is distinct from the Director of Schools' responsibility to reemploy the teacher for the following school year.

Second, the fact that the Board of Education granted Barbee only provisional tenure is evident by the similarity in the positions held by the opposing parties. Both agree that the events at the board meeting set in motion a sequence of events whereby tenure could later vest upon reemployment.[6] They merely disagree as to how long the period of provisional tenure would last. Barbee himself concedes that his tenure did not vest during the Board of Education's April 11, 2011 meeting, arguing instead that his tenure vested upon his supposed reemployment (the next time that he physically reported to work) on April 12, 2011. Implicit in Barbee's concession is the recognition that the Board of Education only provisionally granted him tenure, conditioned on his later

---

[6]The dissent contends that "a teacher must already be eligible for tenure" before the prerequisites of recommendation under § 49-2-301(b)(1)(J) and election under § 49-2-203(a)(1) occur. But the statute does not forbid the Board of Education and Director Houston from relying on a recommendation and election to grant provisional tenure, on the condition that the teacher be reemployed for the following school year. *See generally* Tenn. Code Ann. § 49-2-203(a)(1) (election); § 49-2-301(b)(1)(J) (recommendation); § 49-5-503(4) (reemployment).

reemployment.[7]   Therefore, the parties only truly disagree on the length of Barbee's provisional tenure, in other words, on what event constituted reemployment within the meaning of the Act.

**B.**

Section 49-5-503(4) states that one of the tenure-eligibility requirements is that a teacher need be "reemployed by the board for service after the probationary period." Tenn. Ann. Code § 49-5-503(4) (2010).  Barbee argues that reemployment was satisfied by his showing up for work on April 12, 2011, the day following the Board of Education's meeting.  The Board of Education argues that reemployment was not satisfied because reemployment could be satisfied only by Director Houston's offering Barbee a contract for the 2011-12 school year or seemingly by Barbee's reporting to work as a teacher during the 2011-12 school year.  We find that the Act's plain meaning renders Barbee's interpretation untenable, as does all relevant Tennessee case law, for several reasons.

First, the words "reemployed *by the Board*" undercut Barbee's assertion that his showing up for work the following morning satisfied the tenure-eligibility requirement of reemployment.  *See id.* § 49-5-503(4) (emphasis added).  This statutory language clearly contemplates some sort of "affirmative action" by the Board of Education.  *Snell v. Brothers*, 527 S.W.2d 114, 117 (Tenn. 1975).  Indeed, in *Snell v. Brothers*, a Board of Education successfully argued that it need take some

---

[7]Contrary to the position taken in the dissent, the concept of provisional tenure does not conflict with the fact that a teacher is either tenured or not tenured.  A teacher who had provisional tenure subject to the condition subsequent that he later be reemployed would be not tenured.  When reemployment occurred, he would be tenured.  Moreover, the dissent's own conclusion relies on the concept of provisional tenure in acknowledging that Barbee's tenure did not vest at time of the vote, arguing instead that his tenure vested the "following day."  The Board of Education's tenure vote was thus provisional—being subject to a condition subsequent—under either view of what constitutes reemployment.

"*positive* action to reemploy" a teacher in order to satisfy the reemployment prong of the tenure-eligibility requirements.[8] *Id.* (emphasis in original). And so it seems immaterial if Barbee showed up for work the next morning or not, because Barbee's choice to report to work does not reflect any sort of "positive" or "affirmative action" on behalf of the Board of Education or Director Houston. *See id.* Even if the Board of Education had not provisionally granted Barbee tenure, Barbee presumably would have reported to work the following morning anyway in order to fulfill his obligation under his existing one-year contract. Barbee's argument that fulfillment of an existing contractual obligation constituted reemployment is thus implausible.

Second, the plain meaning of "reemployment" itself does not in any way comport with Barbee's strained explanation of his two periods of employment. Dictionaries define reemployment to mean to "employ (a former employee) *again*[,]" Oxford Dictionaries (online ed. 2013) (emphasis added), and "to hire *back*," Webster's Third New Int'l Dictionary (online ed. 2013) (emphasis added). In an effort to delineate two periods of employment, Barbee essentially argues that his probationary contract was terminated by the Board of Education on April 11, 2011, and that a new employment contract for the remainder of the school year was offered to and accepted by him effective April 12, 2011. But Barbee points to nothing in the record detailing the terms of his new employment contract, such as whether the terms of his new employment contract matched the terms of his probationary contract. Indeed, there is absolutely no evidence in the minutes from the board

_____

[8]In *Snell v. Brothers*, the Board of Education did not provisionally elect the teacher. *See* 527 S.W.2d at 119. Regardless, the discussion of what constitutes reemployment under the Act is helpful. *See id.*

meeting as to these contractual terms. Barbee's concept stretches the definition of reemployment too far and is thus unconvincing.

Third, the plain language of the statute indicates that reemployment need occur "after the probationary period." Tenn. Code Ann. § 49-5-503(4) (2010). The Act states that the "probationary period [is] three (3) school years or not less than twenty-seven (27) months within the last five-year period[.]" *Id.* § 49-5-503(3). While Barbee had completed 27 months of employment, the best reading of the statute, as well as the relevant case law, is that the reemployment concerns the school year that follows the three-year probationary period. *See id.* Because Barbee did not receive a new contract for the following school year or report to work as a teacher in the 2011-12 school year, we conclude that he was not reemployed within the meaning of the Act.

This conclusion is supported by the Act itself, which in § 49-5-401(a) notes that the May 15, 2011 deadline by which the Board of Education needed to reemploy Barbee concerns the "following school year[.]" *Id.* § 49-5-401(a). Our conclusion is further supported by the fact that on nearly every occasion when a Tennessee state court has had occasion to discuss the Act's reemployment requirement, it has either explicitly or implicitly indicated that reemployment refers to the school year that follows the three-year probationary period. *See, e.g.*, *Reeves v. Etowah City Sch. Bd. of Educ.*, 806 S.W.2d 176, 179 (Tenn. 1991) ("We find that Reeves had served the required statutory probationary period and was reemployed by the Board [pursuant to a contract providing for six additional years of] service after the probationary period, as required by the statute[.]"); *Randall v. Hankins*, 733 S.W.2d 871, 872 (Tenn. 1987) ("The positions of two other persons in addition to appellants were eliminated at the end of the 1980-81 school year because of a withdrawal of federal

funding and a decline in enrollment. One of those persons was subsequently reemployed; the other resigned from the system."); *Johnson v. Christian Bros. Coll.*, 565 S.W.2d 872, 873–74 (Tenn. 1978) ("He was not reemployed for the 1975-76 academic year but was notified in December, 1974 that he would not be offered an eighth-year contract with tenure . . . [w]hen petitioner was reemployed for his seventh academic year, 1974-75, he received a letter from the President . . . enclosing his new contract . . ."); *Ryan v. Anderson*, 481 S.W.2d 371, 375 (Tenn. 1972) ("While complainant was employed . . . for a sufficient length of time to complete the probationary period . . . complainant was not re-employed . . . after the probationary period."); *Shannon v. Bd. of Ed. of Kingsport*, 286 S.W.2d 571, 577 (Tenn. 1955) ("We have been cited to no case holding that a teacher who has failed of reemployment for another school year is entitled to notice and the right to a judicial review."); *Gilliam v. Adams*, 171 S.W.2d 813, 813–14 (1943) ("That teachers who have been employed for three or more years in their present school systems . . . and that those teachers employed at the time of the passage of the Act who have not served three or more years but are otherwise qualified by law shall be deemed to be . . . on reemployment for the fourth year."); *Lee v. Franklin Special Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 337 (Tenn. Ct. App. 2007) ("We therefore conclude that Ms. Lee is entitled 'to be paid the full salary' she would have been paid had she been reemployed for the 2002-03 school year, as Tenn. Code Ann. § 49-5-511 provides.").

Also instructive to our analysis is the Tennessee Supreme Court's decision in *Coleman v. Acuff*.[9] *See* 569 S.W.2d 459, 460 (Tenn. 1978). Teacher Carrington Coleman, like Barbee, argued

---

[9]It is true, as noted in the dissent, that certain elements of the statutory scheme changed in 1992 with the passage of the Educational Improvement Act. However, as Barbee conceded during oral argument, the § 49-5-503(4) tenure-eligibility requirement of reemployment has remained the

that he "obtained permanent teacher tenure automatically . . . by continuing in his teaching until the end of the 1976-77 school term, during which completion of his probationary period occurred." *Id.* The court ruled that mere completion of the final school year of a teacher's probationary period could not satisfy the tenure-eligibility requirement of reemployment, stating that "a qualified teacher who has finished the statutory probationary requirements does not obtain tenure status until and unless he or she is *re-employed* by the Board of Education for further service *after expiration of the contract during which the probationary period was completed*."[10] *Id.* (emphasis added). Given the Tennessee Supreme Court's straightforward explanation in *Coleman*, it is perhaps not surprising that Barbee cannot point to a single case that endorses his interpretation of reemployment under the Act.[11]

The weakness of Barbee's argument is further highlighted by *Sanders v. Vinson*, 558 S.W.2d 838, 842 (Tenn. 1977). In *Sanders*, a teacher prevailed on her argument that she satisfied the tenure-

___

same. *See, e.g.*, *Coleman*, 459 S.W.2d at 461. Moreover, one of the central tenets of the EIA was that it divested the Board of Education of its exclusive authority over the hiring and non-renewing of untenured teachers, and instead directed the Board of Education to delegate those duties to the Director of Schools. This divestment if anything bolsters the Board of Education's position that reemployment had not in fact occurred because the Act instructed the Board of Education to delegate the duty to reemploy Barbee to Director Houston. *See* Tenn. Code Ann. § 49-2-301(b)(1) (2010). And Barbee points to nothing in the record that suggests Director Houston did so.

[10]In *Coleman*, the teacher was not provisionally reelected by the Board of Education. *See* 569 S.W.2d at 460. But *Coleman* considered in light of the § 49-5-503 tenure-eligibility requirements is still helpful in determining what constitutes reemployment under the Act. *See id.*

[11]During oral argument, Barbee asserted that the Act's language concerning retainment counseled in favor of his claim that his continued employment was reemployment. That statutory language was not in the version of the Act that applies to this case. Barbee, therefore, cannot rely on the statutory language concerning retainment to bolster his claim of reemployment. *See generally Bowden*, 29 S.W.2d at 465 ("Upon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status . . ." (quoting an older version of the statute)); *Snell*, 527 S.W.2d at 117 (same).

eligibility requirement of reemployment and was in fact a tenured teacher. *See id.* But in *Sanders*, the teacher had completed not only the full probationary period but also a week of in-service training the following August (in conjunction with the school year that followed the probationary period). *See id.* at 840–42 ("[Completing] the three-year or twenty-seven month probationary period by a teacher otherwise qualified, does *not* automatically confer permanent tenure. It merely is a condition precedent to *eligibility* for tenure." (emphasis in original)). By contrast, Barbee was suspended during the final year of his three-year probationary period and completed no employment activity in conjunction with the school year following his probationary period. In conclusion, the plain language of § 49-5-503(4) and all of the relevant case law counsel in favor of accepting the Board of Education's argument that Barbee was not reemployed and thus not tenured.

## IV.

Barbee was not a tenured teacher at the time of his non-renewal, and so the process provided to him prior to his non-renewal was adequate. For the reasons discussed above, the district court's grant of summary judgment to the Board of Education and Director Houston is affirmed.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Under the majority's reading of the Tennessee Teacher Tenure Act ("the Act"), a teacher needed to pass three steps to become a tenured teacher in May 2011: Step One, be recommended by the director of schools to the board of education for tenure; Step Two, be elected by the board for tenure; and Step Three, satisfy the eligibility requirements of Tennessee Code Annotated § 49-5-503 (2010),[1] specifically being "reemployed by the board for service after the probationary period." *See* Majority Op. at 6–7. Preston Barbee—according to the majority—passed Step One, might have passed Step Two, but definitely failed Step Three, because he was not reemployed for the 2011–2012 school year and, thus, was never eligible for tenure. Such conclusions, however, require the suspension of logic, an inversion of the relationship between the board and the director of schools, and a conflation of various versions of the Act. I cannot follow this approach, and therefore, I respectfully dissent.

First, the majority's decision that Barbee satisfied Step One but failed Step Three makes little logical sense: a teacher must already be eligible for tenure to pass Step One. Director Houston admitted that he recommended Barbee for tenure, meaning that Barbee passed Step One. *See* R. 37-3 (Houston Dep. at 15:24–16:8) (Page ID #253–54). Under the Act, however, the director of schools is given only the power to "[r]ecommend to the board teachers who *are eligible* for tenure . . . ." § 49-2-301(b)(1)(J) (emphasis added). The statute says nothing about recommending teachers who might be tenure-eligible in the future. Furthermore, the Act allows the board to "[e]lect, upon the recommendation of the director of schools, teachers who *have*

---

[1]Unless otherwise noted, all citations are to the Tennessee Code as it existed on May 2, 2011, the date that Barbee received notice that his contract would not be renewed.

*attained* or *are eligible* for tenure." § 49-2-203(a)(1) (emphasis added). There is no separate recommendation for, or a vote on, tenure eligibility. If Director Houston and the board were compliant with the Act, they must have considered Barbee already eligible on April 11, 2011, and it appears that they did. According to the board meeting minutes, "[t]he following eligible teachers [including Barbee] were presented for tenure," and there was a motion to "approve the eligible teachers . . . ." R. 38-1 at 54, 55 (Bd. Meeting Mins. at 1, 2) (Page ID #424, 425). Still, the majority claims that Barbee was not tenure-eligible because he was not reemployed for the 2011–2012 school year. *See* Majority Op. at 10. Given this record and the statutory scheme, though, it is quite odd to say that Barbee cleared Step One but failed Step Three when Step One requires a teacher to be eligible for tenure *before* the director of schools recommends him to the board.

Second, the majority's reading of the Act and the events in this case inverts the relationship between the board and the director of schools. As noted above, a board member moved to "approve" Barbee for tenure on April 11, and the motion "carried by all in attendance." R. 38-1 at 55 (Bd. Meeting Min. at 2) (Page ID #425). According to the majority, the passage of this motion granted Barbee "provisional tenure," which would vest upon Director Houston's decision to offer Barbee a contract for the 2011–2012 school year. Majority Op. at 9–10. This understanding is incorrect for two reasons. One, the concept of "provisional tenure" appears nowhere in the Act, and it even conflicts with the majority's statement that "a teacher is either tenured or not tenured." *Id.* at 6. Two, and more fundamentally, this notion of provisional tenure subject to the director's discretion conflicts with the plain language of the Act and Tennessee

case law. Two decades ago, Tennessee passed the Education Improvement Act, 1992 Tenn. Pub. Ch. 535, which "implemented a corporate model of governance and replaced the elected superintendent position with a director of schools, appointed by and *answerable to the board*." *Lawrence Cnty. Ed. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 310 (Tenn. 2007) (citing Tenn. Code Ann. § 49-2-301 (2002 & Supp. 2007)) (emphasis added). While the majority is correct that Director Houston has the power to "employ, transfer, suspend, nonrenew and dismiss all personnel," the majority incorrectly truncated its quotation of the Act, because the Act continues: "except as provided in § 49-2-203(a)(1) and in chapter 5, part 5 of this title." § 49-2-301(b)(1)(EE). Section 49-2-203(a)(1) and chapter five govern teacher tenure, meaning that the Act explicitly makes the director subordinate to the board when teacher tenure is at issue. Furthermore, under § 49-5-504(b), the Act explicitly forbids the director from rehiring a teacher if the board chooses not to grant tenure. To allow the board to approve Barbee for tenure and then have Director Houston override that decision by nonrenewing Barbee's contract makes the limits on the director's powers meaningless, and it conflicts with the basic balance of powers between the board and the director embedded in the Act.

Finally, the majority interprets § 49-5-503 to govern tenure eligibility, but in doing so, it mistakenly grafts requirements found in the current version of the statute onto § 49-5-503 as it existed in May 2011. Today, § 49-5-503 creates a list of five requirements for tenure eligibility, including that the teacher be "reemployed by the director of schools." However, in May 2011, § 49-5-503 merely said: "'Permanent tenure' applies to any teacher who: (1) [meets the education requirements]; (2) Holds a valid professional license . . . ; (3) Has completed a

probationary period of three (3) school years or not less than twenty-seven (27) months . . . ; and (4) Is reemployed by the board for service after the probationary period." Unlike today's version, § 49-5-503 (circa May 2011) did not discuss eligibility. Instead, it listed qualities that triggered tenure, provided that the board took an affirmative action to confer such status. *See, e.g.*, *Snell v. Brothers*, 527 S.W.2d 114, 119 (Tenn. 1975) (requiring affirmative board action for grant of tenure); *Ryan v. Anderson*, 481 S.W.2d 371, 375 (Tenn. 1972) (same). Here, the board took affirmative action at the April 11 board meeting after Director Houston recommended Barbee for tenure. The following day, when Barbee came to work, Barbee had tenure because he had satisfied all conditions under the Act. Therefore, Director Houston lacked the power to nonrenew Barbee's contract without notice and a hearing.

Admittedly, a lay person might not immediately equate reemployment with election and continued employment, but the statute's text easily bears this interpretation. Moreover, it is the only reading that reaffirms the basic structure and logic of the Act. Therefore, I would reverse the district court's grant of summary judgment. Because the majority chooses a different and contrary path, I respectfully dissent.